# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---------------------------------------------------X

UNITED STATES OF AMERICA,        :    Honorable Mary L. Cooper, U.S.D.J.

    Plaintiff,         :    CRIMINAL NO. 04-373

    v.                :

STOP HUNTINGDON ANIMAL    :
CRUELTY USA, INC.,          :
KEVIN KJONAAS, a/k/a        :
"Kevin Jonas," a/k/a "Steve    :
Shore," a/k/a/ "Jim Fareer,"    :
LAUREN GAZZOLA,         :
a/k/a "Angela Jackson," a/k/a  :
"Danielle Matthews,"       :
JACOB CONROY,          :
JOSHUA HARPER,         :
ANDREW STEPANIAN,     :
DARIUS FULLMER, and     :
JOHN McGEE,           :

    Defendants.        :

---------------------------------------------------X

---

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT KEVIN KJONAAS FOR AN EVIDENTIARY HEARING RELATING TO SUPPRESSION, AND FOR SUPPRESSION OF EVIDENCE

---

**ISABEL McGINTY, P.C.**
**[IM-8891]**
162 Broad Street
Hightstown, NJ 08520
(609) 443-0650
*Attorney for Defendant Kevin Kjonaas*

March 11, 2005

# TABLE OF CONTENTS

**PAGE**

PROCEDURAL HISTORY ................................................................ 1

STATEMENT OF FACTS ................................................................ 3

    CHART A -- LISTING OF AFFIDAVITS AND APPLICATIONS ................................ 5

    A. The Nov. 15, 2002 Application (wire)
       (Chart A, column 1) ........................................................ 9

    B. The Nov. 27, 2002 Application (e-mail)
       (Chart A, column 2) ........................................................ 16

    C. The Dec. 14, 2002 Application (wire)
       (Chart A, column 3) ........................................................ 18

    D. The Dec. 26, 2002 Application (e-mail)
       (Chart A, column 4) ........................................................ 20

    E. The Jan. 11, 2003 Application (wire)
       (Chart A, column 5) ........................................................ 21

    F. The Jan.. 24, 2003 Application (e-mail)
       (Chart A, column 6) ........................................................ 24

    G. The Feb. 10, 2003 Application (wire)
       (Chart A, column 7) ........................................................ 25

    H. The Feb. 21, 2003 Application (e-mail)
       (Chart A, column 8) ........................................................ 28

    I. The Apr. 22, 2003 Application
      (search warrant for 101 Home Street in Somerset, NJ)
      (Chart A, column 9) ........................................................ 30

ARGUMENT

    POINT I

    THIS COURT (1) SHOULD CONDUCT AN EVIDENTIARY HEARING
    PURSUANT TO <u>FRANKS v. DELAWARE</u> AS TO THE
    MISSTATEMENTS AND OMISSIONS FROM THE AFFIDAVITS

i

SUBMITTED BY THE GOVERNMENT FOR THE COURT ORDERS RELATING TO THE SEARCHES AND SEIZURES AT ISSUE, AND (2) AFTER THAT HEARING, SHOULD ORDER SUPPRESSED ALL EVIDENCE SEIZED BY THE GOVERNMENT, WITH ALL FRUITS DERIVED THEREFROM, PURSUANT TO THE INTERCEPTION OF WIRE AND ELECTRONIC COMMUNICATIONS, AND THE SEARCH OF 101 HOME STREET, SOMERSET, NJ ............................................... 33

A.     The Applicable Law Relating to Seizures Effected Under Search Warrants and Title III Surveillance Authorization Orders ............................................................................................ 34

    1. The Scienter Requirement ...................................................38

    2. Absence of Probable Cause for the Issuance of the Search Warrant and the Surveillance Authorization Orders .........................42

    3. Additional Fourth Amendment Considerations ............................... 44

        a) Reasonableness ......................................................44

        b) Search of the Home Shared by Defendants Kjonaas and Other Defendants..................................... 45

        c) The Good Faith Exception ......................................... 46

B.     Application.................................................................... 47

    1. The Agents' State of Mind ................................................48

    2. Probable Cause.............................................................. 48

CONCLUSION.................................................................................... 53

# TABLE OF AUTHORITIES

*Cases*:
PAGE

Aguilar v. Texas, 378 U.S. 108 (1964) ....................................................................50

Beard v. City of Northglenn, 24 F.3d 110 (10th Cir. 1994) ......................................41

Berger v. New York, 388 U.S. 41 (1967) ..................................................................36

Brinegar v. United States, 338 U.S. 160 (1949) ........................................................44

Franks v. Delaware, 438 U.S. 154 (1978).......................... 2, 33, 34, 37, 38-40, 42, 46, 47, 52, 53

Giordenello v. United States, 357 U.S. 480 (1958) ...................................................43

Graham v. Connor, 490 U.S. 386 (1989) ...................................................................45

Illinois v. Gates, 462 U.S. 213 (1983) ................................................................38, 43

Illinois v. McArthur, 531 U.S. 326 (2001). ...............................................................44

Johnson v. United States, 333 U.S. 10 (1948) ...........................................................46

Ker v. California, 374 U.S. 23 (1963)........................................................................44

Lauro v. Charles, 219 F.3d 202 (2d Cir. 2000) .........................................................45

Mendocino Environmental Center v. Mendocino County,
    192 F.3d 1283 (9th Cir. 1999) ...........................................................................50

Ohio v. Robinette, 519 U.S. 33 (1996) ......................................................................44

Ornelas v. United States, 517 U.S. 690 (1996).........................................................43

Payton v. New York, 445 U.S. 573 (1980) ................................................................45

Rivera v. United States, 728 F. Supp. 250 (S.D.N.Y. 1990),39-41, 48
    aff'd in relevant part, 928 F.2d 592 (2d Cir. 1991) .................................... 39-41, 48

Scheidler v. National Organization for Women, Inc.,
    537 U.S. 393 (2003)...........................................................................................31

St. Amant v. Thompson, 390 U.S. 727 (1968) ............................................40

United States v. Armocida, 515 F.2d 29 (3d Cir.),
    cert. denied sub nom. Joseph v. United States, 423 U.S. 858 (1975) ........35

United States v. Brown, 761 F.2d 1272 (9th Cir. 1985) ...........................35

United States v. Brown, 951 F.2d 999 (9th Cir. 1991) .............................50

United States v. Brown, 298 F.3d 392 (5th Cir. 2002),
    cert. denied, 537 U.S. 1134 (2003) ...............................................47

United States v. Calisto, 838 F.2d 711 (3d Cir. 1988) ............................35

United States v. Canfield, 212 F.3d 713 (2d Cir. 2000) ...................34, 39, 42

United States v. Carneiro, 861 F.2d 1171 (9th Cir. 1988) .........................37

United States v. Castillo, 287 F.3d 21 (1st Cir. 2002) ...........................48

United States v. Davis, 617 F.2d 677 (D.C. Cir. 1979),
    cert. denied sub nom. Gelestino v. United States, 445 U.S. 967 (1980) ......39

United States v. Dozier, 844 F.2d 701 (9th Cir.),
    cert. denied, 488 U.S. 927 (1988) ...............................................37

United States v. Ferguson, 758 F.2d 843 (2d Cir.),
    cert. denied, 474 U.S. 1032 (1985) ..............................................42

United States v. Frost, 999 F.2d 737 (3d Cir.),
    cert. denied, 510 U.S. 1001 (1993) ..............................................34

United State v. Hernandez, 80 F.3d 1253 (9th Cir. 1996) ..........................37

United States v. Jacobs, 986 F.2d 1231 (8th Cir. 1993) ..........................41

United States v. James, 494 F.2d 1007 (D.C. Cir.), cert. denied
    sub nom. Jackson v. United States, 419 U.S. 1020 (1974) ....................36

United States v. Johns, 851 F.2d 1131 (9th Cir. 1988)............................34

United States v. Johnson, 539 F.2d 181 (D.C. Cir. 1976),
    cert. denied, 429 U.S. 1061 (1977) ..............................................51

United States v. Knights, 534 U.S. 112 (2001) ........................................................51

United States v. Leisure, 844 F.2d 1347 (8th Cir. 1988),
    cert. denied, 488 U.S. 932 (1988) ..............................................................37

United States v. Leon, 468 U.S. 897 (1984)..........................................................46

United States v. Martin, 615 F.2d 318 (5th Cir. 1980). ........................................35

United States v. Martino, 664 F.2d 860 (2d Cir. 1981),
    cert. denied, 485 U.S. 1110 (1982) ..........................................................35

United States v. Meling, 47 F.3d 1546 (9th Cir.),
    cert. denied, 516 U.S. 843 (1995) ............................................................35

United States v. Perez, 247 F. Supp. 2d 459 (S.D.N.Y. 2003). ...........36, 38, 43, 49-52

United States v. Ramirez, 523 U.S. 65 (1998) ......................................................45

United States v. Ranney, 298 F.3d 74 (1st Cir. 2002) ..........................................41

United States v. Reilly, 76 F.3d 1271 (2d Cir. 1996) ...........................................46

United States v. Rubio, 727 F.2d 786 (9th Cir. 1983) ..........................................50

United States v. Rumney, 867 F.2d 714 (1st Cir.),
    cert. denied, 491 U.S. 908 (1989) ............................................................35

United States v. Sandoval, 550 F.2d 427 (9th Cir. 1976),
    cert. denied, 434 U.S. 879 (1977).............................................................36

United States v. Schmitz, 181 F.3d 981 (8th Cir. 1999) ......................................40

United States v. Senchenko, 133 F.3d 1153 (9th Cir.),
    cert. denied, 525 U.S. 872 (1998)............................................................41

United States v. Tehfe, 722 F.2d 1114 (3d Cir. 1983),
    cert. denied sub nom. Sanchez v. United States, 466 U.S. 904 (1984)...........43

United States v. United States District Court, 407 U.S. 297 (1972) ..........................46

United States v. Wapnick, 60 F.3d 948 (2d Cir. 1995),
    cert. denied, 517 U.S. 1187 (1996) ..........................................................47

United States v. Whitley, 249 F.3d 614 (7th Cir. 2001) ........................................................40, 47

United States v. Williams, 737 F.2d 594 (7th Cir. 1984),
  cert. denied, 470 U.S. 1003 (1985) .....................................................................................35, 40

Wilson v. Layne, 526 U.S. 603 (1999) ........................................................................................45

Wilson v. Russo, 212 F.3d 781 (3d Cir. 2000) ....................................................................... 39-41

Ybarra v. Illinois, 444 U.S. 85 (1979) .........................................................................................51

## *Other Authorities:*

Wayne R. LaFave, Search & Seizure § 4.4 (3d ed. 1996) .............................................................39

## Table of Contents -- Bound Volume of Exhibits Filed Under Seal

**Nov. 15, 2002 Application (wire):**

Order Authorizing the Interception of Wire Communications . . . . . . . . . . . . . . Da1 to Da5

Application for Interception of Wire Communications . . . . . . . . . . . . . . . . . . Da6 to Da16

Affidavit of FBI Special Agent Millicent A. Tompa
    in Support of the Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Da17 to Da110

**Nov. 27, 2002 Application (e-mail):**

Order Authorizing the Interception of Electronic Communications . . . . . . . Da111 to Da116

Application for Interception of Electronic Communications . . . . . . . . . . . . Da117 to Da123

Affidavit of FBI Special Agent Millicent A. Tompa
    in Support of the Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Da128 to Da183

**Dec. 14, 2002 Application (wire):**

Order Authorizing the Interception of Wire Communications . . . . . . . . . . . Da184 to Da187

Application for Interception of Continued Wire Communications . . . . . . . . Da188 to Da198

Affidavit of FBI Special Agent Millicent A. Tompa
    in Support of the Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Da199 to Da248

**Dec. 26, 2002 Application (e-mail):**

Order Authorizing the Interception of Electronic Communications. . . . . . . Da249 to Da254

Application for Continued Interception of Electronic Communications . . . .Da255 to Da263

Affidavit of BATF Special Agent Calvin A. Meyer
    in Support of the Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Da264 to Da307

**Jan. 14, 2003 Application (wire):**

Order Authorizing the Interception of Continued Wire Communications . . . Da308 to Da313

Application for Interception of Continued Wire Communications . . . . . . . . Da314 to Da324

Affidavit of FBI Special Agent Millicent A. Tompa
    in Support of the Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Da325 to Da388

**Jan. 24, 2003 Application (e-mail):**

Order Authorizing the Interception of Electronic Communications . . . . . . . Da389 to Da394

Application for Continued Interception of Electronic Communications . . . .Da395 to Da403

Affidavit of FBI Special Agent Millicent A. Tompa
    in Support of the Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Da404 to Da460

**Feb. 10 , 2003 Application (wire):**

Order Authorizing the Interception of Continued Wire Communications . . . Da461 to Da466

Application for Interception of Continued Wire Communications . . . . . . . . Da467 to Da478

Affidavit of BATF Special Agent Calvin A. Meyer
    in Support of the Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Da479 to Da558

**Feb. 21, 2003 Application (e-mail):**

Order Authorizing the Interception of Electronic Communications . . . . . . . Da559 to Da564

Application for Continued Interception of Electronic Communications . . . .Da565 to Da577

Affidavit of FBI Special Agent Millicent A. Tompa
    in Support of the Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Da578 to Da640

**April 22, 2003 Application (search warrant:  101 Home St., Somerset, NJ):**

Application and Affidavit for Search Warrant . . . . . . . . . . . . . . . . . . . . . . Da641 to Da643

Affidavit of FBI Special Agent John F. Bennett
    in Support of the Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Da644 to Da673

# PROCEDURAL HISTORY

On May 20, 2004, the Clerk of this Court filed a five-count indictment against seven individual defendants (Kevin Kjonaas, Lauren Gazzola, Jacob Conroy, Joshua Harper, Andrew Stepanian, Darius Fullmer, and John McGee), and one corporate defendant (Stop Huntingdon Animal Cruelty USA, Inc., also known as SHAC USA, or SHAC).

In Count One of the indictment, all defendants have been charged with conspiracy in violation of the Animal Enterprise Protection Act (the "AEPA"), 18 U.S.C. § 43(a)(1). Count Two charges that SHAC, Kjonaas, Gazzola and Conroy conspired to use a facility in interstate commerce to violate the interstate stalking statute, contrary to 18 U.S.C. § 2261A(2) and in violation of 18 U.S.C. § 371. In Counts Three through Five, the same four defendants have been charged individually with violations of the interstate stalking statute, contrary to 18 U.S.C. § 2261A and 2.

The individual defendants were arraigned on the indictment on June 15, 2004. The arraignment of the corporate defendant SHAC took place on July 20, 2004.

On September 16, 2004, the Superseding Indictment was filed with the Court, by which defendants SHAC, Kjonaas, Gazzola, Conroy, and Harper have been charged in the add-on Count Six with having "knowingly and wilfully combine[d], conspire[d] and agree[d] with one another and with others to utilize a telecommunications device to abuse, threaten and harass persons at the called number and who received the communication without disclosing the identity of the person utilizing the telecommunications device, contrary to" 47 U.S.C. § 223(a)(1)(C), in violation of 18 U.S.C. § 371.

The individual defendants named in the added count thereafter entered their pleas of not guilty, pursuant to Fed. R. Crim. P. 10(b).

Defendant Kjonaas, through his counsel, now moves the Court for an evidentiary hearing, pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), based on the misstatements and omissions of fact in the affidavits submitted by the Government in support of its applications for wiretaps, electronic intercepts, and the search warrant of defendants' residence at 101 Home Street in Somerset, NJ (the affidavits and applications of Government agents, at issue in this motion, are annexed in the separate volume of exhibits filed under seal). Mr. Kjonaas moves the Court, following that hearing, to order suppressed all evidence obtained by means of the wiretaps, electronic intercepts, and the home search, on the basis that the remaining content of the applications and affidavits was insufficient to establish probable cause for commission of the offenses upon which the applications were based.

# STATEMENT OF FACTS

Defendant Kjonaas, through this motion, seeks an order from the Court suppressing all evidence seized as the result of wire surveillance, electronic surveillance, and the search of his home conducted by the Government. He asks the Court to conduct a Franks hearing to review the sufficiency of the affidavits submitted to the courts issuing the search warrants and authorization orders. Defendant Kjonaas also asks the Court to determine whether the affidavits (considered without the misstatements, and with relevant information -- which had been left out of the affidavit -- properly weighed) established probable cause for the commission of the offenses upon which the applications were based. Following that hearing, defendant Kjonaas will apply to the Court for an order suppressing all evidence seized in the searches and surveillances at issue.

In a series of applications to the United States District Court for the District of Minnesota from November 2002 through February 2003, the Department of Justice sought to investigate, through wire and electronic surveillance, the activities of animal rights activists, with the investigation focused on the day-to-day activities of defendant Kjonaas, on the phone and in his use of computers. The federal court in Minnesota authorized four 30-day periods of wire surveillance. By separate applications and orders, the federal court in Minnesota also authorized four similar periods of electronic surveillance, during which the Government seized much of the evidence upon which it appears to be basing the present prosecution. This suppression motion addresses each of those applications made by the Government within the scope of Title III, 18 U.S.C. §§ 2510 to 2519.

In April 2003, the United States Attorney's Office for the District of New Jersey applied to the United States District Court for the District of New Jersey for a warrant authorizing the search of Mr. Kjonaas' residence in Somerset, NJ. In the search conducted thereafter by Government agents, the Government removed from the home of Mr. Kjonaas and other defendants many boxloads of materials, which included multiple computers, computerized information, personal items, and documents and records -- materials upon which the Government also appears to have based the prosecution now pending.

Chart A, which follows, sets forth in chronological order the nine separate applications submitted to the district courts for the searches and seizures at issue in this motion to suppress. Chart A sets forth:

- the date of the application,
- the name of the agent who signed the affidavit,
- the citation to the section of the affidavit which set forth the statement of probable cause,
- the statutory offenses which the defendant and other specified individuals were alleged in the affidavits to have violated, and
- the names of the persons alleged by the Government to be in violation of those statutes.

Chart A follows:

# CHART A -- LISTING OF AFFIDAVITS AND APPLICATIONS

| | AFFIDAVIT AND APPLICATION, NOV. 15, 2002 (wire) | AFFIDAVIT AND APPLICATION, NOV. 27, 2002 (e-mail) | AFFIDAVIT AND APPLICATION, DEC. 14, 2002 (wire) | AFFIDAVIT AND APPLICATION, DEC. 26, 2002 (e-mail) | AFFIDAVIT AND APPLICATION, JAN. 11, 2003 (wire) | AFFIDAVIT AND APPLICATION, JAN. 24, 2003 (e-mail) | AFFIDAVIT AND APPLICATION, FEB. 10, 2003 (wire) | AFFIDAVIT AND APPLICATION, FEB. 21, 2003 (e-mail) | AFFIDAVIT AND APPLICATION, APR. 22, 2003 (search warrant -- 101 Home St., Somerset, NJ) |
|---|---|---|---|---|---|---|---|---|---|
| | Da1 to Da110 | Da111 to Da183 | Da184 to Da248 | Da249 to Da307 | Da308 to Da388 | Da389 to Da460 | Da461 to Da558 | Da559 to Da640 | Da641 to Da673 |
| *Affiant:* | FBI SA Millicent A. Tompa (Da7) | FBI SA Millicent A. Tompa (Da128) | FBI SA Millicent A. Tompa (Da199) | ATF SA Calvin A. Meyer (Da264) | FBI SA Millicent A. Tompa (Da325) | FBI SA Millicent A. Tompa (Da404) | ATF SA Calvin A. Meyer (Da479) | FBI SA Millicent A. Tompa (Da578) | FBI SA John A. Bennett (Da644) |
| *Statement of Probable Cause:* | Da19-22 | Da130-33 | Da200-04 | Da266-70 | Da327-31 | Da406-11 | Da481-85 | Da581-87 | Da646-47 |
| *offense:* | 18 U.S.C. § 1951 (extortion -- Hobbs Act) | 18 U.S.C. § 1951 (extortion -- Hobbs Act); § 2 (aiding & abetting); § 371 (Conspiracy); § 875 (Threatening Interstate Communics.); § 1952 (Travel Act) | 18 U.S.C. § 1951 (extortion -- Hobbs Act); § 2 (aiding & abetting); § 371 (Conspiracy); § 875 (Threatening Interstate Communics.); § 1952 (Travel Act) | 18 U.S.C. § 1951 (extortion -- Hobbs Act); § 2 (aiding & abetting); § 371 (Conspiracy); § 875 (Threatening Interstate Communics.); § 1952 (Travel Act) | 18 U.S.C. § 1951 (extortion -- Hobbs Act); § 2 (aiding & abetting); § 371 (Conspiracy); § 875 (Threatening Interstate Communics.); § 1952 (Travel Act) | 18 U.S.C. § 1951 (extortion -- Hobbs Act); § 2 (aiding & abetting); § 371 (Conspiracy); § 875 (Threatening Interstate Communics.); § 1952 (Travel Act) | 18 U.S.C. § 1951 (extortion -- Hobbs Act); § 2 (aiding & abetting); § 371 (Conspiracy); § 875 (Threatening Interstate Communics.); § 1028 (Identity Theft); § 1030 (Computer Fraud & Abuse); § 842 (Unlawful Acts); § 1952 (Travel) | 18 U.S.C. § 1951 (extortion -- Hobbs Act); § 2 (aiding & abetting); § 371 (Conspiracy); § 875 (Threatening Interstate Communics.); § 1028 (identity Theft); § 1030 (Computer Fraud & Abuse); § 842 (Unlawful Acts); § 1952 (Travel Act) | 18 U.S.C. § 2 (aiding & abetting); § 43 (Animal Enterprise Protection Act); § 371 (Conspiracy); § 1028 (Identity Theft); § 1030 (Computer Fraud & Abuse); § 1952 (Travel Act) |

5

| Persons named as violators in the Affidavit: | Da19-Da20 | Da130-Da131 | Da201-Da202 | Da266-Da268 | Da327-Da328 | Da407-Da409 | Act) Da482-Da483 | Act) Da582-Da584 |
|---|---|---|---|---|---|---|---|---|
| Kevin Donald Kjonaas | Kevin Donald Kjonaas | Kevin Donald Kjonaas | Kevin Donald Kjonaas | Kevin Donald Kjonaas | Kevin Donald Kjonaas | Kevin Donald Kjonaas | Kevin Donald Kjonaas | Kevin Donald Kjonaas |
|  |  | Nicholas Henry Atwood |  | Nicholas Henry Atwood | Nicholas Henry Atwood | Nicholas Henry Atwood | Nicholas Henry Atwood | Nicholas Henry Atwood |
| Gregory Harrison Avery | Gregory Harrison Avery | Gregory Harrison Avery | Gregory Harrison Avery | Gregory Harrison Avery | Gregory Harrison Avery | Gregory Harrison Avery | Gregory Harrison Avery | Gregory Harrison Avery |
| Heather James Avery | Heather James Avery | Heather James Avery | Heather James Avery | Heather James Avery | Heather James Avery | Heather James Avery | Heather James Avery | Heather James Avery |
| David Nathan Babarash | David Nathan Babarash | David Nathan Babarash | David Nathan Babarash | David Nathan Babarash | David Nathan Babarash | David Nathan Babarash | David Nathan Babarash | David Nathan Babarash |
| Kimberly Ann Berardi | Kimberly Ann Berardi | Kimberly Ann Berardi | Kimberly Ann Berardi | Kimberly Ann Berardi | Kimberly Ann Berardi | Kimberly Ann Berardi | Kimberly Ann Berardi | Kimberly Ann Berardi |
|  |  |  |  |  | Steve Best | Steve Best | Steven P. Best | Steven P. Best |
| Jacob Matthew Conroy | Jacob Matthew Conroy | Jacob Matthew Conroy | Jacob Matthew Conroy | Jacob Matthew Conroy | Jacob Matthew Conroy | Jacob Matthew Conroy | Jacob Matthew Conroy | Jacob Matthew Conroy |
|  |  |  |  |  |  |  | Christine A. DiBella | Christine A. DiBella |
| Kathleen Ann Fedor | Kathleen Ann Fedor | Kathleen Ann Fedor | Kathleen Ann Fedor |  | Kathleen Ann Fedor | Kathleen Ann Fedor | Kathleen Ann Fedor | Kathleen Ann Fedor |
| Darius Glen Fullmer | Darius Glen Fullmer | Darius Glen Fullmer | Darius Glen Fullmer | Darius Glen Fullmer | Darius Glen Fullmer | Darius Glen Fullmer | Darius Glen Fullmer | Darius Glen Fullmer |
|  |  |  |  |  |  | Christine Garcia |  |  |
| Lauren Beth Gazzola | Lauren Beth Gazzola | Lauren Beth Gazzola | Lauren Beth Gazzola | Lauren Beth Gazzola | Lauren Beth Gazzola | Lauren Beth Gazzola | Lauren Beth Gazzola | Lauren Beth Gazzola |
|  |  |  |  |  | Jennifer Greenberg | Jennifer Greenberg | Jennifer Greenberg | Jennifer Greenberg |
|  |  |  |  |  | Joe Haptes [phonetic] | Joe Haptes [phonetic] | Joseph Frank Haptas, Jr. | Joseph Frank Haptas, Jr. |
| Joshua James Harper | Joshua James Harper | Joshua James Harper | Joshua James Harper | Joshua Caleb Harper | Joshua Caleb Harper | Joshua Caleb Harper | Joshua Caleb Harper | Joshua Caleb Harper |
| David Patrick Hayden | David Patrick Hayden | David Patrick Hayden | David Patrick Hayden | David Patrick Hayden | David Patrick Hayden | David Patrick Hayden | David Patrick Hayden | David Patrick Hayden |

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 | Column 6 | Column 7 |
|---|---|---|---|---|---|---|
| Nicholas Michael Hensey | Nicholas Michael Hensey | Nicholas Michael Hensey | Nicholas Michael Hensey | Nicholas Michael Hensey | Nicholas Michael Hensey | Nicholas Michael Hensey |
| Kelly A. Higgins | | Kelly A. Higgins | Kelly A. Higgins | Kelly A. Higgins | Kelly A. Higgins | Kelly A. Higgins |
| Shannon Rebecca Keith | Shannon Rebecca Keith | Shannon Rebecca Keith | Shannon Rebecca Keith | Shannon Rebecca Keith | Shannon Rebecca Keith | Shannon Rebecca Keith |
| | | | | | Steven G. Krollfier | Steven G. Krollfier |
| | | | David Eugene Lambon | David Eugene Lambon | David Eugene Lambon | David Eugene Lambon |
| Andrea Joan Lindsay | Andrea Joan Lindsay | Andrea Joan Lindsay | Andrea Joan Lindsay | Andrea Joan Lindsay | Andrea Joan Lindsay | Andrea Joan Lindsay |
| David Cory Lovejoy | David Cory Lovejoy | David Cory Lovejoy | David Cory Lovejoy | David Cory Lovejoy | David Cory Lovejoy | David Cory Lovejoy |
| Gina Lynn Trapp | Gina Lynn Trapp | Gina Lynn Trapp | Gina Lynn Trapp | Gina Lynn Trapp | Gina Lynn Trapp | Gina Lynn Trapp |
| Daniel J. Lysk | Daniel J. Lysk | Daniel J. Lysk | Daniel J. Lysk | Daniel J. Lysk | Daniel J. Lysk | Daniel J. Lysk |
| Jill Amy Natowitz | Jill Amy Natowitz | Jill Amy Natowitz | Jill Amy Natowitz | Jill Amy Natowitz | Jill Amy Natowitz | Jill Amy Natowitz |
| | Minyun Park | Minyun Park | Minyun Park | Minyun Park | Minyun Park | Minyun Park |
| Bryan William Pease | Bryan William Pease | Bryan William Pease | Bryan William Pease | Bryan William Pease | Bryan William Pease | Bryan William Pease |
| Benjamin Adam Persky | Benjamin Adam Persky | Benjamin Adam Persky | Benjamin Adam Persky | Benjamin Adam Persky | Benjamin Adam Persky | Benjamin Adam Persky |
| Joshua D. Schwartz | Joshua D. Schwartz | Joshua D. Schwartz | Joshua D. Schwartz | Joshua D. Schwartz | Joshua D. Schwartz | Joshua D. Schwartz |
| Andrew L. Stepanian | Andrew L. Stepanian | Andrew L. Stepanian | Andrew L. Stepanian | Andrew L. Stepanian | Andrew L. Stepanian | Andrew L. Stepanian |
| Natasha Taylor | Natasha Taylor | Natasha Taylor | Natasha Taylor | Natasha Taylor | Natasha Taylor | Natasha Taylor |
| | | | Robin Louis Webb | Robin Louis Webb | Robin Louis Webb | Robin Louis Webb |
| Ethan Jason Wolf | Ethan Jason Wolf | Ethan Jason Wolf | Ethan Jason Wolf | Ethan Jason Wolf | Ethan Jason Wolf | Ethan Jason Wolf |
| Aaron Jackson Zellhoefer | Aaron Jackson Zellhoefer | Aaron Jackson Zellhoefer | Aaron Jackson Zellhoefer | Aaron Jackson Zellhoefer | Aaron Jackson Zellhoefer | Aaron Jackson Zellhoefer |
| | | | Marion F. Zinowski | Marion F. Zinowski | Marion F. Zinowski | Marion F. Zinowski |

| | | | | | | |
|---|---|---|---|---|---|---|
| Steve [Last Name Unknown] | Steve [Last Name Unknown] | Steve [Last Name Unknown] | Steve [Last Name Unknown] | Steve [Last Name Unknown] (Da488: identified as Steven G. Krolffier) | | |
| | | | Christine [Last Name Unknown] | | | |
| | | | Marion [Last Name Unknown] | | | |
| | | | Monica [Last Name Unknown] | Monica [Last Name Unknown] | Monica [Last Name Unknown] | Monica [Last Name Unknown] |
| | | "Mez" | "Mez" | "Mez" | "Mez" | "Mez" |
| | | "Sun Tzu" | "Sun Tzu" | "Sun Tzu" | "Sun Tzu" | "Sun Tzu" |

## A.    The Nov. 15, 2002 Application (wire)
### (Chart A, column 1)

On November 15, 2002, the Department of Justice applied to the United States District Court for the District of Minnesota for an order, pursuant to 18 U.S.C. § 2518, authorizing a 30-day interception of wire communications to and from telephone numbers 732 545-7560 and 732 545-7570, subscribed to by Kevin Kjonaas. Da18-Da19. In her affidavit in support of the application, FBI Special Agent Millicent A. Tompa stated, on the basis of all information which she had received and determined to be reliable, that defendant Kjonaas and 19 other named persons (including defendants Conroy, Fullmer, Gazzola, and Stepanian):

> have committed, are committing, and will continue to commit violations of [18 U.S.C. § 1951] (interference with commerce by threats or violence), hereinafter referred to as the "Hobbs Act", in the District of Minnesota and elsewhere. Specifically, the subjects of this investigation are operating an international extortion scheme against companies engaged in or doing business with companies engaged in animal-based medical research or "exploitation." Pursuant to this scheme, companies and their employees are subjected to harassment, arson, property damage, and even physical attack until they discontinue their ties to animal-based research. [Da20]

The affidavit alleged that probable cause existed "to believe that the aforementioned subjects" -- i.e., defendant Kjonaas and the 19 listed violators -- as well as unidentified others, "utilize [the two targeted] telephone number[s] . . . to commit the crime" of Hobbs Act extortion "on an ongoing basis." Da20.

The present motion to suppress is focused on the statutory bases for the extraordinary relief -- the searches and seizures -- sought by the Government in the series of nine affidavits. The first affidavit, then, was based wholly on alleged violations of the Hobbs Act. As time passed (as detailed below), the Government came to cite additional

statutes against defendant Kjonaas and other alleged "violators." This motion to suppress is founded on the failure of the Government to have set forth any facts linking defendant Kjonaas and the others alleged to have been "violators" of those statutes with the crimes specifically cited by the Government in each affidavit.

In support of the allegations, the affidavit then listed the arrest history of the 20 individuals named therein as "violators." See Da22-Da43. The affidavit omits mention that the arrests listed for the "violators" related to protest and boycott activities, and few (if any) of the arrests resulted in any criminal dispositions or convictions. See Da22-Da43. The few dispositions other than outright dismissals, in turn, involved either conditional discharges, or charges downgraded to low-level ordinance violations or misdemeanors. See Da22-Da43. More damningly, the affidavit alleges that many of the persons named as "violators" are identified with an "NCIC warning," and/or as a "terrorist organization member," and/or as an "animal rights extremist," and/or as an "envrmtl [environmental]" or "dmst [domestic] extremist." See Da22-Da43. The affidavit omits the critical information that the mere association with animal rights or environmental causes or protest activity had led to the designation of these labels. With no explanation provided by the affiant as to why, who, or how the "violators" had come to be branded with these labels and warnings, the Department of Justice was able merely to cite the attachment of the label as a basis warranting the extraordinary investigative tactics sought through the application for the surveillance order.

The affidavit then discusses a raid at the University of Minnesota in April 1999, for which the Animal Liberation Front (ALF) had claimed responsibility. Da43-Da44. The affidavit then (1) lumps the activities of the Earth Liberation Front (ELF) with the

ALF, (2) conflates their actions with a definition of terrorism attributed to James F. Jarboe, a Section Chief within the FBI (Da46), (3) links the activities of "Stop Huntingdon Animal Cruelty, or simply SHAC" -- as a "sub-group in the animal rights movement" -- within the same category, and (4) sweeps defendant Kjonaas within the same category and into all of those organizations in one broad brush. Da43-Da50. The affidavit then attributes actions in the United Kingdom to SHAC and to defendant Kjonaas, as well as actions directed against Huntingdon Life Sciences (HLS) and its employees in the United States. Da50-Da57.

The affidavit then describes efforts attributed to SHAC, animal rights protesters, and defendant Kjonaas at Legacy Trading Inc., an Oklahoma company that acted as a market maker for HLS, to enable HLS stock to be traded. Da57-Da59. The affidavit sets forth calls made to Legacy by protesters to express their opposition to Legacy's doing business with HLS, as well as calls attributed to defendant Kjonaas to achieve the same result. Da57-Da64. The section of the affidavit dealing with Legacy ends with a discussion of an FBI undercover operation to attract SHAC protests against an ostensible business dealing with HLS. The affidavit alleges that the FBI undercover operation succeeded in attracting protest calls from animal rights activists, as well as from the targeted telephone numbers attributed to defendant Kjonaas. Da63-64.

At no point in the affidavit, so far, did the affiant attribute to defendant Kjonaas, or to any of the other named "violators," any conduct in violation of the Hobbs Act, although that act was the sole statute cited as the basis for the wire intercept order requested.

The affidavit sets forth thereafter information relating to protest activities of animal rights activists against Marsh USA, an insurance broker for HLS. Da65-Da67.

The affidavit then alleges that trap-and-trace information showed that defendant Kjonaas had received e-mails from addresses attributed to SHAC and to animal rights leaders and activists in the United States and United Kingdom. Da67. The affidavit states, in terms as explosive as they are vague, "The vast majority of the incoming email addresses are from known and active SHAC/animal rights activists in the US and the UK, some of whom are being investigated by the FBI regarding animal rights/domestic terrorism violations." Da67. The allegation is not further clarified in the affidavit.

The affidavit alleges that Mr. Kjonaas' e-mails address has already been subjected to a search warrant in Minnesota, but the e-mails seized were encrypted and could not be read by the Special Agents. Da68. The affidavit alleges, "From one of the emails that was not encrypted, it was clear that KJONAAS was directing the activities of the SHAC USA website." Da68. The affidavit does not allege that any activities attributable to Mr. Kjonaas from that e-mail involved criminal acts, or any violation of the Hobbs Act. The affidavit then describes actions of environmental activists in Montana on behalf of forest preservation. Six days after a wood industry annual meeting took place in Montana, the FBI has determined that one of the targeted telephone numbers attributed to Mr. Kjonaas was used to make and to receive two phone calls to Montana numbers to a location that "appears to be located less than one hundred miles from" a Montana national forest. Da68-Da69.

On that basis, the affidavit alleges, "Your Affiant *believes* that these calls *may have been made* between KJONAAS and one of the activists the US Forest Service was

referring to, further demonstrating KJONAAS' connections to violent activists around the US." Da69 (emphasis added). The allegation is plainly based on broad and wild speculation, without basis in any credible evidence. It also has no connection with the Hobbs Act, or to any conduct attributed to defendant Kjonaas or any of the other 19 named "violators" in connection with the Hobbs Act.

The affidavit then cites articles, interviews, and statements attributed to animal rights activists and defendant Kjonaas in support of the cause of animal rights. Da69-Da71. Again, the allegations have no connection to violation of the Hobbs Act.

The affidavit then mentions a report on an animal rights website of a police raid in England in October 2002, with two persons arrested. Da71. The website had listed a phone number in the United Kingdom, and one of the targeted numbers attributed to defendant Kjonaas called that number five days after the alleged raid. Da71-72. The affidavit continues, "It should also be noted that KJONAAS has received encrypted emails from Greg Avery, who was arrested on October 4, as detailed above." Da72. The affidavit again does not link defendant Kjonaas or any of the other 19 persons listed as "violators" with any act in violation of the Hobbs Act.

The affidavit then describes protest activities directed against Mark Bibi, HLS corporate counsel, in November 2002. Da72. The affidavit describes that one of the targeted phone numbers attributed to defendant Kjonaas had placed four calls to Bibi's residence -- but in the distant past, with calls occurring one month before, and two months before, the events of November 2002. The affidavit also alleges that Mr. Kjonaas' telephone numbers had been linked to the phone numbers of other activists who had protested in person outside Mr. Bibi's home in the past. Da73. Again, the affidavit

13

has still not listed or described any colorable violation of the Hobbs Act. In its listing of protest activities, the affidavit never notes that the protests are all legal demonstrations, with the protesters lawfully voicing their opinions as protected speech.

The affidavit then describes that the 50th anniversary of HLS was to occur on December 1, 2002, and SHAC was advertising that it would organize protests around that event. Da74. The affidavit attributes to Mr. Kjonaas' telephone numbers calls to New Jersey "area parks, hotels, rental car companies, and bail bond offices." Da74. The affidavit continues: "Based on this pattern of telephone call activity, your Affiant *surmises* that KJONAAS is preparing and planning for many SHAC activists to come to New Jersey for the December 1, 2002, weekend of protests and that he is also expecting many activists to be arrested." Da74-Da75. Again, the affidavit does not set forth any violation of the Hobbs Act, or any allegation of criminal activity within the scope of that act. The acts attributed to Mr. Kjonaas are all lawful, and non-criminal.

There follows in the affidavit a summary of pen register and trap-and-trace information for the target phone numbers. Da75-Da91. The affidavit lists calls among persons identified as animal rights activists and protesters; persons who have been arrested at animal rights demonstrations; a California attorney who "spoke to protesters in a taped public meeting" at a SHAC protest against HLS in Little Rock, Arkansas (Shannon Keith, who is also named as a "violator" of the Hobbs Act in the affidavit, Da20; for speaking with the protesters, Ms. Keith appears to have been designated with an "NCIC warning," and branded a "terrorist organization member, animal rights extremist," Da31); calls with animal rights and environmental organizations in the United States, and to unspecified recipient numbers in the United Kingdom; calls to the stock

14

exchange and to various corporations; scores of calls involving news media. Da75-86. The affidavit surmises, without any basis in fact cited other than the bare attribution of phone calls, with regard to the stock exchange calls: "Your Affiant *surmises* that KJONAAS is attempting to gain information on clients of HLS through these contacts." Da86 (emphasis added). As for the calls attributed to news media, the affidavit alleges, with no basis in reality or evidence: "Your Affiant *surmises* that KJONAAS is placing calls to media outlets to claim direct action in their area on behalf of SHAC or the A.L.F." Da85-Da86 (emphasis added).

The affidavit attributes 705 outgoing calls to a New Jersey number "whose subscriber is not on record." Da87. Without any basis for how the affiant seized upon the belief listed, the affiant speculates: "It is *believed* by your Affiant that this number is an internet connection number and that KJONAAS uses this telephone to contact his internet service provider to send and receive emails from other animal rights activists and *to direct the content of the SHAC website*." Da87 (emphasis added). The allegation is a wild guess, unfounded in any evidence. More importantly, even if true, the allegation bears no relation to any violation of the Hobbs Act attributed to defendant Kjonaas or any of the other 19 persons listed as "violators" in the affidavit. Da87.

The affidavit ends with a description of some of the alternate investigative methods used by federal agents in connection with the investigation of the persons listed for Hobbs Act violations, Da91-Da103, followed by a statement of the need for electronic surveillance, and the minimization efforts to be conducted, Da103-Da109. Nowhere in the affidavit is there any statement of how defendant Kjonaas or any of the other 19 named "violators" is alleged to "have committed, [be] committing, and [will be]

15

continu[ing] to commit violations of" 18 U.S.C. § 1951, the Hobbs Act, so as to provide a basis for the reviewing court to have determined that probable cause existed for the issuance of the warrant sought and thereafter obtained. See Da1-Da5 (order).

**B.    The Nov. 27, 2002 Application (e-mail)**
**     (Chart A, column 2)**

On November 27, 2002, the Department of Justice applied to the United States District Court of the District of Minnesota for an order, again pursuant to 18 U.S.C. § 2518, authorizing the 30-day interception of electronic communications for certain internet e-mail addresses attributed to defendant Kjonaas. Da117-Da118. In her affidavit in support of the application, FBI Special Agent Tompa stated, on the basis of all information which she had received and determined to be reliable, that defendant Kjonaas and 17 other named persons (including defendants Conroy, Fullmer, Gazzola, Harper, and Stepanian), and an additional person listed as Steve [Last Name Unknown]:

> have committed, are committing, and will continue to commit violations of [18 U.S.C. § 1951] (interference with commerce by threats or violence), hereinafter referred to as the "Hobbs Act"; 2 (Aiding and abetting); 371 (Conspiracy); 875 (Threatening interstate communications); and 1952 (Interstate travel in aid of racketeering) hereinafter collectively referred to as the "Specified Federal Offenses." Specifically, the subjects of this investigation are operating an international extortion scheme against companies engaged in or doing business with companies engaged in animal-based medical research or "exploitation." Pursuant to this scheme, companies and their employees are subjected to harassment, arson, property damage, and even physical attack until they discontinue their ties to animal-based research.
> [Da131]

The statutory bases for the relief sought now included several statutes in addition to the Hobbs Act. The affidavit alleged that probable cause existed "to believe that the aforementioned subjects" -- i.e., defendant Kjonaas and the 17 listed violators -- as well

16

as unidentified others, utilize the targeted e-mail accounts to commit the crimes just listed "on an ongoing basis." Da131.

In support of the allegations, the affidavit then incorporates by reference Agent Tompa's affidavit of November 15, 2002, and then adds the updated arrest history of the individuals named therein as violators. See Da134-Da138. The deficiencies of this affidavit repeat those already listed for the November 15, 2002 affidavit (and those omissions and misleading characterizations of the criminal histories are repeated in each of the subsequent applications for e-mail and wire intercept authorizations).

The affidavit then attributes to defendant Kjonaas communication with other animal rights activists through e-mail, and states the unsupported conclusion that "[t]here is probable cause to believe that the content of KJONAAS' recent emails would demonstrate his direction and control over SHAC's acts of violence." Da140. The affidavit characterizes the use of encryption attributed to defendant Kjonaas as indicative (in a wholly unspecified way) of his criminal involvement in the specified crimes. Da139.

In a vague and speculative narrative, the affidavit attributes to defendant Kjonaas the use of the internet and e-mail to communicate with animal rights activists and alleged organizers. Da141-Da158. The affidavit sets forth the unsupported conclusion that, because defendant Kjonaas appears to have had e-mail and telephone contact with persons named in the affidavit as "violators" of the specified federal laws, it must follow that the contacts have been for a criminal purpose. See Da143-Da158. That conclusion is unsupported by the information outlined so minimally and shaded with such narrative bias in the affidavit.

The affidavit does not set forth any violation of the Hobbs Act, or any allegation of criminal activity within the scope of that act. Further, although the affidavit alleges that probable cause exists that defendant Kjonaas and the 17 others named as "violators" have violated the Travel Act (section 1952), and have violated 18 U.S.C. § 875 (threatening interstate communications), the affidavit provides no basis whatsoever for such a finding of probable cause. The affidavit gives the boilerplate citations and the bare description of what the statutes at issue proscribe, but the affidavit does not reveal any basis upon which to found a probable cause determination that defendant Kjonaas (or any of the named "violators") had conspired, or aided and abetted, or acted as a principal for the commission of any of the specified offenses.

## C. The Dec.14, 2002 Application (wire)
*(Chart A, column 3)*

On December 14, 2002, the Department of Justice applied to the United States District Court for the District of Minnesota for an order, pursuant to 18 U.S.C. § 2518, authorizing the continuation, for an additional 30 days, of the interception of wire communications to and from telephone numbers 732 545-7560 and 732 545-7570, subscribed to by Kevin Kjonaas. Da199-Da200. In her affidavit in support of the application, FBI Special Agent Tompa stated, on the basis of all information which she had received and determined to be reliable, that defendant Kjonaas and now 25 other named persons (including defendants Conroy, Fullmer, Gazzola, Harper, and Stepanian)[1]:

> have committed, are committing, and will continue to commit violations of [18 U.S.C. § 1951] (interference with commerce by threats or violence), hereinafter referred to as the "Hobbs Act"; 2 (Aiding and abetting); 371

---

[1] Although the list of alleged violators in the affidavits reached 36 specifically-named individuals (as well as additional others known only by first names, and two others identified only as "Mez" and "Sun Tzu"), defendant John McGee was not named in any of the affidavits at issue herein.

> (Conspiracy); 875 (Threatening interstate communications); and 1952
> (Interstate travel in aid of racketeering) hereinafter collectively referred to
> as the "Specified Federal Offenses." Specifically, the subjects of this
> investigation are operating an international extortion scheme against
> companies engaged in or doing business with companies engaged in
> animal-based medical research or "exploitation." Pursuant to this scheme,
> companies and their employees are subjected to harassment, arson,
> property damage, and even physical attack until they discontinue their ties
> to animal-based research.
> [Da202]

The affidavit alleged that probable cause existed "to believe that the

aforementioned subjects" -- i.e., defendant Kjonaas and the 25 listed violators -- as well

as unidentified others, utilize the targeted telephone numbers to commit the crimes just

listed "on an ongoing basis." Da203.

The affidavit incorporates by reference Agent Tompa's prior two affidavits, and

starts with the same informationally-deficient statement of the criminal histories of the

persons listed therein as "violators." See Da205-Da209.

The affidavit then adds additional information about contacts attributed to

defendant Kjonaas with animal rights activists, and imputes to defendant Kjonaas

involvement in criminal activity on the basis of mere innuendo flowing from his alleged

contacts with the animal and environmental rights community, as well as actions and

words attributed to other activists and defendant Kjonaas against the animal

experimentation activities of HLS . See Da209-Da227.

As with the predecessor affidavits, the December 14, 2002 affidavit provides no

basis upon which the issuing court could determine that probable cause existed that

defendant Kjonaas had committed the violations of the specific statutes listed therein, and

the court therefore lacked any basis for the issuance of the intercept order which the court

signed on that date. See Da184-Da187 (order).

**D.    The Dec. 26, 2002 Application (e-mail)**
       *(Chart A, column 4)*

On December 26, 2002, the Department of Justice applied to the United States

District Court of the District of Minnesota for an order, again pursuant to 18 U.S.C. §

2518, authorizing the 30-day continued interception of electronic communications for the

same two internet e-mail addresses attributed to defendant Kjonaas. Da255-Da258;

Da265-Da268.

In his affidavit in support of the application, Special Agent Calvin A. Meyer of

the Bureau of Alcohol, Tobacco and Firearms (ATF) stated, on the basis of all

information which he had received and determined to be reliable, as well as his reliance

on the prior affidavits of FBI Special Agent Tompa, that defendant Kjonaas and 17 other

named persons (including defendants Conroy, Fullmer, Gazzola, Harper, and Stepanian),

and an additional person listed as Steve [Last Name Unknown], and two others

(identified as "Mez" and "Sun Tzu"):

> have committed, are committing, and will continue to commit violations
> of [18 U.S.C. § 1951] (interference with commerce by threats or violence),
> hereinafter referred to as the "Hobbs Act"; 2 (Aiding and abetting); 371
> (Conspiracy); 875 (Threatening interstate communications); and 1952
> (Interstate travel in aid of racketeering) hereinafter collectively referred to
> as the "Specified Federal Offenses." Specifically, the subjects of this
> investigation are operating an international extortion scheme against
> companies engaged in or doing business with companies engaged in
> animal-based medical research or "exploitation." Pursuant to this scheme,
> companies and their employees are subjected to harassment, arson,
> property damage, and even physical attack until they discontinue their ties
> to animal-based research.
> [Da267]

The affidavit alleged that probable cause existed "to believe that the

aforementioned subjects" -- i.e., defendant Kjonaas and the 17 listed violators -- as well

as unidentified others, utilize the targeted e-mail accounts to commit the crimes just listed "on an ongoing basis." Da267-Da268.

In support of the allegations, the affidavit then incorporates by reference the listings of the criminal histories of the persons listed as "violators," as set forth in Agent Tompa's prior affidavits. See Da270. The deficiencies of this affidavit repeat those already listed for the earlier affidavits.

The affidavit then attributes to defendant Kjonaas further general communications with other animal rights activists by e-mail and telephone, and the use of encryption for electronic communications. See Da270-Da284. The affidavit does not set forth information relevant to criminal acts encompassed within the scope of the federal acts cited as the basis for the application. Further, the affidavit suggests that discussion over e-mail of lawful protest against HLS should provide a basis for the electronic surveillance sought. Da279-Da284. The affidavit ends with the statement that prior methods of surveillance and investigation have not provided the basis for the prosecution of the named "violators" for the statutes cited. See Da284-Da303.

**E.      The Jan. 11, 2003 Application (wire)**
**        (Chart A, column 5)**

On January 11, 2003, the Department of Justice applied to the United States District Court for the District of Minnesota for an order, pursuant to 18 U.S.C. § 2518, authorizing the continuation, for an additional 30 days, of the interception of wire communications to and from telephone numbers 732 545-7560 and 732 545-7570, subscribed to by Kevin Kjonaas. Da314-Da316; Da325-Da326. In her affidavit in support of the application, FBI Special Agent Tompa stated, on the basis of all information which she had received and determined to be reliable, that defendant Kjonaas