# Robert A. Obler
Attorney at Law

Certified by the Supreme Court of New Jersey
As a Criminal Trial Attorney

3131 Princeton Pike
Building 3D-Suite 200
Lawrenceville, NJ 08648

Tel: (609) 896-1321
Fax: (609) 896-3184

BY FAX ONLY

February 20, 2006

Honorable Anne E. Thompson, U.S.D.J.
UNITED STATES COURTHOUSE
402 East State Street
Trenton, NJ 08609

Re: United States v. SHAC, et al.

Dear Judge Thompson:

Previously, we sent the Court proposed instructions. We are forwarding a new set which is different from the first in the following respects. The Requested Instruction No. 6 has been changed and Requested Instructions numbered 7 through 13 have been added. The remainder of the packet is the same.

Respectfully submitted,

Robert A. Obler

Enclosure
RAO:rst
cc: Charles McKenna, A.U.S.A.
    Ricardo Solano, A.U.S.A.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,  :
        Plaintiff                    :    Criminal No. 04-373 (MLC)

v.  :

STOP HUNTINGDON ANIMAL  :
CRUELTY USA, INC., et al.
                                :
        Defendant.

## DEFENDANTS PROPOSED JURY INSTRUCTIONS

### REQUESTED INSTRUCTION #1

The First Amendment to the United States Constitution restricts the ability of the government to impose liability on an individual solely because of his association with another person or an organization. U.S. Const. Amend. 1; *National Assoc. For the Advancement of Colored People v. Claiborne Hardware Co.*, 458 U.S. 886, 918-19, 102 S.Ct. 3409, 3428 (1982).

### REQUESTED INSTRUCTION #2

Although the First Amendment does not protect violence, the right to associate does not lose its constitutional protection merely because some members of an associational group may have participated in conduct or advocated doctrine that itself is not protected. *Claiborne*, 458 U.S. at 908, 916.

REQUESTED INSTRUCTION #3

When some members of a group are engaged in violence or threats of violence these individuals unquestionably may be held responsible for the injuries that they caused, and a judgment tailored to the consequences of their unlawful conduct may be sustained. However, a prohibition of association with a group having both legal and illegal aims presents a real danger that legitimate political expression and association will be impaired. *Scales v. United States*, 367 U.S. 203, 229, 81 S.Ct. 1469, 1486 (1961); *Claiborne*, 458 U.S. at 919, 927.

REQUESTED INSTRUCTION #4

In order to punish a person for association with any such group, the government has the burden of establishing a knowing affiliation with an organization possessing unlawful aims and goals, and a specific intent to further those illegal aims. This intent must be judged "according to the strictest law," for otherwise there is a danger that one in sympathy with the legitimate aims of such an organization, but not specifically intending to accomplish them by resort to violence, might be punished for his adherence to lawful and constitutionally protected purposes, because of other unprotected purposes which he or she does not necessarily share. *Noto v. United States*, 367 U.S. 290, 299-300, 81 S.Ct. 1517, 1521 (1961); *Claiborne*, 458 U.S. at 919; *Healy v. James*, 408 U.S. 169, 186, 92 S.Ct. 2338, 2348 (1972).

REQUESTED INSTRUCTION #5

"[G]uilt by association is a philosophy alien to the traditions of a free society" and impermissible under the First Amendment. *Schware v. Board of Bar Examiners*, 353 U.S. 232, 245-46, 77 S.Ct. 752, 759 (1957); *Claiborne*, 458 U.S. at 925, 932.

# REQUESTED INSTRUCTION #6

18 U.S.C. § 2261A as charged in the Indictment requires that the government prove beyond a reasonable doubt:

a. that the defendants, Stop Huntingdon Animal Cruelty USA, Inc., Kevin Kjonaas, Lauren Gazzola and Jacob Conroy, used the mail or any facility of interstate or foreign commerce;

b. that the mail or facility of interstate or foreign commerce was used to engage in a course of conduct that placed another person, or a member of the immediate family or a spouse of that person, or an intimate partner of that person, in reasonable fear of death or serious bodily injury;

c. that the defendants had the intent to place that person, or a member of the immediate family or spouse of that person, or an intimate partner of that person, in reasonable frear of death or serious bodily injury; and

d. that the person referred to above was in another State different from the defendants.

Lawful First Amendment protected activity or the advocacy of lawful First Amendment activity is not a course of conduct which places a person in reasonable fear of death or serious bodily injury. Stated another way, the government must prove beyond a reasonable doubt that the defendants intentionally engaged in a course of conduct which was not protected by the First Amendment. 18 U.S.C. § 2261A(2)(B)

REQUESTED INSTRUCTION #7

All forms of expression, verbal or otherwise, are presumptively protected by the First Amendment. U.S. Const. amend. I; *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 109 S.Ct 916, (1989).

REQUESTED INSTRUCTION #8

The hallmark of the protection of free speech is to allow "free trade in ideas"--even ideas that the overwhelming majority of people might find distasteful or discomforting. The First Amendment ordinarily denies a State the power to prohibit dissemination of social, economic and political doctrine which a vast majority of its citizens believes to be false and fraught with evil consequence, and the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable. *Virginia v. Black*, 538 U.S. 343, 358, 123 S.Ct. 1536, 1547 (2003).

REQUESTED INSTRUCTION #9

Expression on public issues has always rested on the highest rung of the hierarchy of First Amendment values. Speech concerning public affairs is more than self-expression; it is the essence of self-government. There is a "profound national commitment" to the principle that "debate on public issues should be uninhibited, robust, and wide-open." *Carey v. Brown*, 447 U.S. 455, 467, 100 S.Ct. 2286, 2293, (1980); *Garrison v. Louisiana*, 379 U.S. 64, 74-75, 85 S.Ct. 209, 215 (1964); *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 720 (1964).

REQUESTED INSTRUCTION #10

The protections afforded by the First Amendment, however, are not absolute, and the government may regulate certain categories of expression consistent with the Constitution. For example, a State may punish "fighting words"--those personally abusive epithets which, when

addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke an immediate violent reaction. And the First Amendment also permits the government to ban a "true threat." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S.Ct. 766, 769 (1942); *Watts v. United States*, 394 U.S. 705, 89 S.Ct. 1399 (1969); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388, 112 S.Ct. 2538 (1992).

REQUESTED INSTRUCTION #11

"True threats" encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. A prohibition on true threats protects individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur. True threats occur when a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death. Political hyperbole is not a true threat. *Virginia v. Black*, 538 U.S. 343, 359-60, 123 S.Ct. 1536, 1548 (2003).

REQUESTED INSTRUCTION #12

While the government may criminalize certain categories of speech, including true threats and fighting words, it is well established that the mere *advocacy* of the use of force or violence does not remove speech from the protection of the First Amendment. The constitutional guarantee of free speech does not permit the government to forbid or proscribe advocacy of the use of force except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action. The mere abstract teaching of the moral propriety or even moral necessity for a resort to force and violence, is not the same as preparing a group for violent action

5

and steeling it to such action, and cannot be criminalized. *Brandenburg v. Ohio*, 395 U.S. 444 (1969); *Noto v. United States*, 367 U.S. 290, 299-300, 81 S.Ct. 1517, 1521 (1961).

REQUESTED INSTRUCTION #13

Strong and effective extemporaneous rhetoric cannot be nicely channeled into purely harmonious, acceptable, and attractive phrases. An advocate must be free to stimulate his audience with spontaneous and emotional appeals for unity and action in a common cause. Unless such appeals are intended to incite imminent lawless action, and are likely to do so, or unless they constitute a true threat, they must be regarded as protected speech. The right of free speech cannot be denied by drawing from a trivial rough incident or a moment of animal exuberance the conclusion that otherwise peaceful activity has the taint of force. *National Assoc. For the Advancement of Colored People v. Claiborne Hardware Co.*, 458 U.S. 886, 918-19, 102 S.Ct. 3409, 3428 (1982); *Milk Wagon Drivers v. Meadowmoor Dairies, Inc.*, 312 U.S. 287, 293, 61 S.Ct. 552, 555 (1941).

REQUESTED INSTRUCTION #14

ANIMAL TESTING

The issue of animal testing is not before you to determine whether or not it is ethical, or whether or not it is scientifically worthwhile.

Testimony about animal testing has been allowed in this case for the limited purpose of explaining what HLS does and what is objected to by animal rights activists.

## REQUESTED INSTRUCTION #15

## AUDIO TAPES

The government has played tapes of conversations between many different individuals. Within them there were references to individuals incarcerated for charges separate and apart from those at issue in this case.

You are not to speculate as to the charges, nor to use this information as any type of guidance in your determination as to whether or not the government has proved each element of the charges in this case beyond a reasonable doubt.

## REQUESTED INSTRUCTION #16

## EMOTION - SYMPATHY

There has been testimony in this case that has produced emotion from several witnesses. There is nothing wrong with emotion being displayed.

The emotion only becomes problematic if it sways you from your obligations to decide if the government proved the elements charged.

I charge you that emotion and sympathy have no place in your jury deliberations. The case must be decided on the facts, as you find them, and how they fit within the elements as I will charge you.

This is a criminal case, with specific requirements of proof that must be proved beyond a reasonable doubt before a person can be judged guilty.

## REQUESTED INSTRUCTION #17

## RADIO INTERVIEWS

As I previously instructed you, neither the questions asked in radio interviews, nor the comments of the interviewer, are evidence. Interviewers have their own agenda and their own purposes for asking certain questions. What they ask and how they do so may be intended to provoke, agitate, and/or obtain a particular response or type of response. Therefore, this information may not be considered in your determination as to whether the government has proven each element beyond a reasonable doubt.

## REQUESTED INSTRUCTION #18

## ANIMAL ENTERPRISE TERRORISM - ESSENTIAL ELEMENTS

To sustain the charge of conspiracy to violate the Animal Enterprise Terrorism statute in Count One of the Superseding Indictment, the Government must prove each of the following elements beyond a reasonable doubt:

First: That the defendants conspired – that is agreed with one another and with others to travel in interstate commerce or to use the mail or any facility in interstate or foreign commerce;

Second: That the purpose of the conspiracy was to cause physical disruption to the functioning of an animal enterprise; and

Third: That the defendants conspired – that is agreed with one another and with others to intentionally damage or cause the loss of property (including animals or records) used by the animal enterprise.

## REQUESTED INSTRUCTION #19

## AMOUNT OF LOSS

If you find that the government has proven each and every one of the three elements of the offense as I have just outlined them to you, beyond a reasonable doubt, then you must go on to determine whether the government has proven beyond a reasonable doubt that, in the course of committing the offenses, any person in the conspiracy actually caused economic damage in excess of $10,000.00, or whether, in the course of committing the offense, any person in the conspiracy actually caused economic damage not exceeding $10,000.00.

The term "economic damage" as I have used it means the replacement costs of lost or damaged property or records, the costs of repeating an interrupted or invalidated experiment or the loss of profits.

## REQUESTED INSTRUCTION #20

## FIRST ELEMENT - INTERSTATE TRAVEL OR USE OF INTERSTATE FACILITIES

The first element that must be proven beyond a reasonable doubt is that each or any of the defendants conspired that is agreed with one another and with others to travel in interstate commerce or to use the mail or any facility in interstate or foreign commerce.

To travel in interstate commerce is to travel from one state to another. The term "uses any facility in interstate commerce" means employing or utilizing any method of communication or transportation between one state and another. Using a facility in interstate commerce would include use of a telephone, internet and e-mail provided that the communication using those manners traveled from one state to another. Using a facility in interstate commerce would also include use

9

fo the United States mails regardless of whether the piece of mail traveled from one state to another so long as it was placed in the stream of the United States mail.

REQUESTED INSTRUCTION #21

SECOND ELEMENT - CAUSE PHYSICAL DISRUPTION

The second element that must be proven beyond a reasonable doubt is that the purpose of the agreement was to cause physical disruption to the functioning of an animal enterprise.

The term "physical disruption" means an actual interference with the normal course of business or activity at an animal enterprise. It is not necessary for the government to prove that the defendant actually caused physical disruption; it is only necessary to show that the defendant's purpose was to cause physical disruption.

The term physical disruption does not include any lawful disruption that results from lawful public, governmental or animal enterprise employee reaction to the disclosure of information about an animal enterprise.

The term "animal enterprise" means a commercial or academic enterprise that uses animals for food or fiber production, agriculture, research or testing.

I charge you that Huntingdon Life Sciences is an animal enterprise under the statute.

REQUESTED INSTRUCTION #22

THIRD ELEMENT - LOSS

The third element that must be proven beyond a reasonable doubt is that the defendants caused, or conspired or agreed with others to cause, damage to or the loss of any property (including animals or records) used by the animal enterprise.

In this regard, I instruct you that under this count of the Indictment, the damage to or loss of property must involve property used by the animal enterprise. Damage to or loss of someone else's property does not satisfy the government's burden under this count.

Respectfully submitted,

/s/ H. Louis Sirkin
H. LOUIS SIRKIN (Ohio Bar No. 0024573)
Sirkin, Pinales & Schwartz LLP
105 West Fourth Street, Suite 920
Cincinnati, Ohio 45202
Telephone: (513) 721-4876
Telecopier: (513) 721-0876

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served the courts electronic filing system on the 1st day of March, 2006 to:

Isabel McGinty
162 Broad Street
Highstown, New Jersey 08520

Michael Armstrong
79 Mainbridge Lane
Willingboro, New Jersey 08046

Hal K. Haveson
Haveson & Otis
194 Nassau Street
Princeton, New Jersey 08542

Jerome A. Ballarotto
143 White Horse Avenue
Trenton, New Jersey 08610

Robert A. Obler
143 White Horse Avenue
Trenton, New Jersey 08610

Joshua L. Markowitz
Markowitz, Gravelle & Schwimmer, LLP
3131 Princeton Pike
Lawrenceville, New Jersey 08648

James R. Murphy
947 State Road
Princeton, New Jersey 08540

Charles B. McKenney
Assistant U.S. Attorney
970 Broad Street, Suite 700
Newark, New Jersey 10712


\_\_/s/ H. Louis Sirkin_____
H. Louis Sirkin

G:\HLS\GAZZOLA\juryinstruct.wpd