UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY


UNITED STATES OF AMERICA,      :

                                    Criminal No.  04-373

            Plaintiff        :

   v.                            :

STOP HUNTINGDON ANIMAL      :
CRUELTY USA, INC., et al.
                                 :

            Defendant.

---

### DEFENDANT LAUREN GAZZOLA'S OBJECTIONS
### TO THE DRAFT MODIFIED PRESENTENCE INVESTIGATION REPORT

---

Comes now Defendant, Lauren Gazzola, by and through counsel, and, pursuant to this Court's July 7, 2000 Standing Order, respectfully submits the following objections and factual clarifications to the Draft Modified Presentence Investigation Report ("PSR") prepared by USPO Kenneth W. Manuel on May 8, 2006.


Respectfully submitted,


      /s/ H. Louis Sirkin
H. LOUIS SIRKIN (Ohio Bar No. 0024573)
Sirkin, Pinales & Schwartz LLP
105 West Fourth Street, Suite 920
Cincinnati, Ohio  45202
Telephone:  (513) 721-4876
Telecopier:  (513) 721-0876

Counsel for Defendant Lauren Gazzola

## OBJECTIONS & FACTUAL CLARIFICATIONS

**Page 1 & Passim:**

Lauren Gazzola objects to the description on the first page of the PSR, and throughout, in referring to the conviction on Count Six as " Conspiracy to Utilize a Telecommunication Devise [sic] to Stalking." Count Six of the superceding indictment charged Ms. Gazzola and her co-Defendants with conspiracy to violate 47 U.S.C. § 223(a)(1)(C), which prohibits utilizing a telecommunication device in interstate commerce " to annoy, abuse, threaten, or harass." Additionally, there was no evidence presented that Ms. Gazzola or any of her co-Defendants ever used or conspired to use any interstate telecommunication device to stalk anyone. Thus, in regard to Count Six, there is no element of " stalking" in the statute, and " stalking" cannot be inferred from the superseding indictment, from the evidence, or from the jury' s verdict. As such, Ms. Gazzola objects to any reference throughout the PSR to " stalking" as an element to 47 U.S.C. § 223(a)(1)(C) or in regard to her conviction on Count Six.

Similarly, Ms. Gazzola objects to the description on the first page of the PSR, and throughout, in referring to the conviction on Count One as " Animal Enterprise *Terrorism*." The correct name of the statute, as demonstrated by Section 1 of Public Law 102-346, is the " Animal Enterprise Protection Act of 1992." Additionally, all parties agreed that the word, " terrorism," would be kept out of the trial, and instead referred to the charge as a violation of the AEPA. Any reference in the PSR to " terrorism" is misleading and prejudicial to Ms. Gazzola, and should be stricken from the PSR.

**Paragraph 8:**

The jury trial commenced on February 6, 2006, not February 1, 2006.

**Paragraph 11 & passim**:

Ms. Gazzola would note that there appears to be an oversight in that the PSR fails to note the conviction on Count Four in Paragraph 11 and throughout the PSR.

**Paragraph 18**:

Ms. Gazzola appeared before the Honorable Mary L. Cooper on June 15, 2004, not June 15, 2006.

**Paragraph 25**:

Ms. Gazzola objects to several different statements in Paragraph 25 of the PSR which mischaracterize or take liberties with the evidence and the record in this case. First, Stop Huntingdon Animal Cruelty USA, *Inc*. (" SHAC USA, Inc.") is the not-for-profit corporation referred to in Paragraph 25. SHAC USA, Inc. is an entity unto itself that is entirely distinct and separate from the Stop Huntingdon Animal Cruelty (" SHAC") *campaign*, which is an international and unincorporated, loosely organized campaign active in eighteen different countries, and from Stop Huntingdon Animal Cruelty United Kingdom (" SHAC UK"), which was an entity organized in the United Kingdom to oppose Huntingdon Life Sciences (" HLS") and its research methods in England.

Second, Ms. Gazzola objects to the conclusory and unfounded statement that " SHAC was formed to interrupt the business of HLS and ultimately to force it to cease operations …." To the extent that the PSR is referring to SHAC USA, Inc., its purpose was to educate the public about animal rights issues and its ethical implications, to disseminate information relevant to the animal

rights movement, and to use " educational outreach to the public to try and halt animal experimentation, particularly with regard to Huntingdon Life Sciences." There was no evidence presented at the trial that SHAC USA, Inc. was formed " to interrupt the business of HLS" or to ultimately " force it to cease operations," but rather only to oppose the forms of animal testing procedures performed at HLS.

Third, Ms. Gazzola would note that at least two of the websites listed in Paragraph 25, SHACUSA.net and October29.org, existed prior to the incorporation of SHAC USA, Inc., and thus could not have possibly been created by SHAC USA, Inc. Finally, there was no evidence adduced at trial that SHAC USA, Inc., Ms. Gazzola, or any of her co-Defendants controlled, chose, or coordinated the activities of either SHAC or the listed websites.

**Paragraph 26:**

Kevin Kjonaas was the president of SHAC USA, Inc. not SHAC. Other than Mr. Kjonaas acting as president, SHAC USA, Inc. had no employees or official positions, and thus Ms. Gazzola could not be a " campaign coordinator" or hold any other official position, as those terms are commonly understood. Similarly, Jacob Conroy was not a " spokesperson" for the group. There was no corporate resolutions or employment contracts which would or could confirm that the corporation had any such positions or that anyone acted in that capacity. Additionally, there was no evidence that Jacob Conroy or Ms. Gazzola " was involved in uploading information" to any website. Accordingly, Ms. Gazzola objects to the description of her as " campaign coordinator" for SHAC as such a finding is unsupported by the evidence.

**Paragraph 33**:

Ms. Gazzola objects to the description of the " object of the conspiracy" contained in Paragraph 33 in that the conduct described does not violate 18 U.S.C. § 43. As more fully explained in Mr. Kjonaas' s Rule 29/Rule 33 Motion, which Ms. Gazzola adopted in her post-trial Motion for Judgment of Acquittal or in the Alternative Motion for New Trial, economic disruption of a company does not constitute " physical disruption" as contemplated by the statute, and any damage to other companies that indirectly harms the " animal enterprise" is not prohibited by 18 U.S.C. § 43.

**Paragraph 34:**

Ms. Gazzola objects to the entirety of Paragraph 34 as an inaccurate and unfounded conclusory description that has no evidentiary basis in the record. First, there was no evidence that Ms. Gazzola or any of her co-Defendants " embarked on a campaign to enlist animal rights activists to engage in activity meant to harm the business of HLS in any manner available." Additionally, the so-called " top 20 terror tactics" were not compiled by, adopted by, promoted by, nor espoused by Ms. Gazzola nor any of her co-Defendants. To the contrary, the SHAC website merely reprinted this list that was created and printed by the UK Royal Defense Society, a British group that promoted animal testing and that compiled this list as its own interpretation of some of the actions that it believed animal rights protestors had used or might use in the United Kingdom. The SHAC websites merely republished this already public list, including the ironic and hyperbolic name that accompanied it, as a commentary on the sensationalism promoted by the animal testing industry over animal rights protesting. Nowhere on the SHAC websites (nor anywhere in the evidence adduced at trial) was it ever indicated that these were tactics that " could

be taken against companies or individuals" opposed by SHAC, nor were these tactics ever endorsed or adopted by Ms. Gazzola or any of her co-Defendants. To state otherwise is to mischaracterize the facts to the prejudice of Ms. Gazzola and her co-Defendants, and is hereby objected to as unsupported by the evidence.

**Paragraph 35**:

Ms. Gazzola objects to the characterization of the evidence in Paragraph 35 of the PSR in that nowhere did the evidence show that she or any of her co-Defendants conducted or engaged in email or fax blitzes or computer blockades against HLS or any other company. Additionally, there was no evidence at trial that any of the Defendants coordinated or incited any such activities. At most, the evidence showed that the SHAC websites contained a link to other websites that had information about how to conduct such activities. Additionally, as detailed further in Ms. Gazzola' s Motion for Judgment of Acquittal or in the Alternative Motion for New Trial, and in her co-Defendants' respective post-trial motions, the posting of publicly available information, including a person' s or a company' s name, phone number, or physical address, as well as mailings, telephone calls, and home demonstrations, are all protected, First Amendment expression. Ms. Gazzola objects to the statement in the PSR that this protected communicative activity was ever used to " encourage[] people to engage in acts of harassment and intimidation" or that it was done " in an attempt to place them in reasonable fear of serious bodily injury and/or death" as this information was not proven at trial, nor could it be reasonably inferred from the jury' s verdict as it was not an element of the crime charged.

**Paragraph 36**:

Ms. Gazzola objects to the characterization in Paragraph 36 of the PSR that the " acts of intimidation and vandalism perpetrated on HLS employees would be reported … in a manner designed to foster additional acts against those same employees as well as others.… These acts would be used as examples in order to intimidate, harass and threaten other individuals." Again, none of this information was demonstrated at trial, nor could it be reasonably inferred from the jury' s verdict. To the contrary, the only person who testified regarding these allegations, Jeffrey Dillbone, testified that he did not get the idea to engage in illegal action from the past conduct listed on the websites, but rather stated that such tactics were widely known for a long time to activists in the protest community. Additionally, as detailed further in Ms. Gazzola' s Motion for Judgment of Acquittal or in the Alternative Motion for New Trial, and in her co-Defendants' respective post-trial motions, the reporting of past actions on the SHAC websites (amongst a wealth of other information unrelated to any alleged illegal activity) was protected First Amendment speech, that would not and could not reasonably place a person in reasonable fear of death or serious bodily injury, nor would it be foreseeable that it could do so. Simply put, there was no evidence at trial to support any allegations in Paragraph 36, and, accordingly, such statements are inflammatory, prejudicial, unsupported by the facts, and have no place in the PSR.

**Paragraph 37**:

Again, Ms. Gazzola objects to the unfounded, conclusory implications and allegations in the PSR that SHAC used " direct action" to " target" and illegally " force" any company to cease its business relationship with HLS. Rather, SHAC informed the public and targeted businesses and other entities through legal First Amendment activities such as letter writing, telephone calls,

and other legal protest activities in order to promote their political ideals of stopping animal testing. The Defendants never advocated or incited any force or acts of violence, but simply reported on animal rights issues and encouraged legal tactics and public pressure against such companies in an effort to reduce animal testing activities.

**Paragraph 38**:

Ms. Gazzola again objects to the characterization of the Defendants' activities as involving " force," that the SHAC websites " coordinate[d] computer attacks" in order to " cause damage to, or shut down, the computer systems" of any company, or that any activities associated with SHAC were " designed to harm [any] businesses and thereby force them to cease doing business with HLS," for the same reasons as discussed above. Again, none of these allegations are supported by the evidence, but are rather conclusory and prejudicial statements that mischaracterize the record.

**Paragraph 39:**

For the same reasons stated in the preceding paragraphs, Ms. Gazzola objects to the misstatement of facts and the unfounded implications contained in Paragraph 39 of the PSR. Again, the posting of publicly available information, including a person' s or a company' s name, phone number, or physical address, as well as mailings, telephone calls, and home demonstrations, are all protected, First Amendment activity, the publishing of which encompasses and contemplates multiple legitimate and protected uses. Additionally, Ms. Gazzola objects to the statement in the PSR that this protected communicative activity was ever used to " encourage[ people] to engage in acts of harassment and intimidation" or that it was done " to threaten and intimidate individuals," or in an attempt to " place them in reasonable fear of serious bodily injury

and/or death," as this information was not proven at trial, nor could it be reasonably inferred from the jury's verdict. Finally, there was no evidence that any of the Defendants " intended to disrupt the operations of" the target companies or acted with the " intent" to " force" them to cease doing business with HLS.

**Paragraph 40:**

For the same reasons as previously stated, Ms. Gazzola objects to the unfounded statements contained in Paragraph 40. Again, there was no evidence in the record that any acts were reported on the SHAC website " to be used as examples to intimidate, harass and threaten other individuals and companies" or to place individuals " in reasonable fear of serious bodily injury and/or death." Additionally, there was absolutely no evidence that any of the Defendants burned documents or falsely attributed conduct to other entities, as reported in the PSR. All of these unsupported statements should be stricken from the PSR.

**Paragraph 41:**

Ms. Gazzola objects to Paragraph 41 of the PSR as being unsupported by the facts at trial, the indictment, or the jury's verdict. First, there was no proof of any sort that Ms. Gazzola or any of her co-Defendants were responsible for, or even involved in, the attack on HLS's computer systems. Additionally, there was no testimony or other proof that any such attack " caused" any " damage" to the computers, let alone proof that any such " damage" " was in excess of $1 million." To the contrary, Michaelson testified only that HLS incurred $400,000 in " lost business" $50,000 in staffing costs, and $15,000 of costs in upgrading the computer equipment. Additionally, for the same reasons explained in the objection to Paragraph 33, *supra*, these costs, as well as the costs associated with " security" and " management time" are not

damages within the meaning of the statute. Additionally, the "complete cost to HLS" was never shown to be in excess of $1 million," and the PSR's conclusory statement to the contrary is unsupported by the evidence. The only evidence of any actual damage to HLS was a break in that occurred before the charged conspiracy allegedly initiated and the demolition of a building at the HLS facility. However, there was no proof that any of the Defendants or even anyone associated with them was involved in the break in, and HLS voluntarily demolished the building on their property. Thus, neither of these events are attributable to Ms. Gazzola or her co-Defendants, and are not damages within the meaning of the statute.

Moreover, under the Sixth Amendment, a Defendant may not be held liable for loss amounts that increase the penalties and punishments of a given crime unless that element is either admitted by the defendant or pled in the indictment, proven beyond a reasonable doubt, and specifically found by a jury. *See Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004); and *United States v. Booker*, 543 U.S. 220 (2005). In the present case, the damages discussed in the PSR were neither admitted by the defendants nor proven beyond a reasonable doubt nor found by the jury. Accordingly, Ms. Gazzola objects to any reference in Paragraph 35 or anywhere else in the PSR to specific damages or loss amounts suffered by HLS.

**Paragraph 42:**

Ms. Gazzola objects to the listing of business in Paragraph 42 as irrelevant and prejudicial. Because these businesses were not "animal enterprises" as contemplated in 18 U.S.C. § 43, they are irrelevant to Count 1 of the indictment. Similarly, they were not the targets of any stalking as alleged in Counts 2-5, and thus are irrelevant to those charged counts. Finally, there was no

proof that they were the recipients of any abusive, threatening, or harassing interstate telecommunications as contemplated in Count 6. Thus, their inclusion in the PSR is completely irrelevant and only serves to prejudice Ms. Gazzola and her co-Defendants. Accordingly, their inclusion herein is objected to.

**Paragraph 43:**

With the exception of SD, MH, and RH, Ms. Gazzola objects to the listing of individuals in Paragraph 43 for the same reasons as outlined in her objection to Paragraph 42, *supra*.

**Paragraph 44:**

There was no evidence at trial that Ms. Gazzola specifically " chose and publicized the targets," " operated the SHAC Website," " provided legal support," or was " essentially involved in all aspects of the operation." The PSR' s conclusory, prejudicial, and unfounded statements to the contrary are specifically objected to, and should be stricken from the PSR  To the extent that any of these activities was shown at trial or could be inferred from the evidence therein, all such activities are presumably constitutionally protected under the First Amendment, and thus add nothing to the PSR and should be stricken as irrelevant.

**Paragraph 45:**

To the extent that publication of a calendar of events was demonstrated at trial or could be inferred from the evidence therein, all such activities are presumably constitutionally protected under the First Amendment. However, there was no evidence to support the unstated implication that this publication incited any specific illegal activity. Accordingly, these statements add nothing to the PSR and should be stricken as irrelevant.

**Paragraph 46:**

Ms Gazzola objects to Paragraph 46 of the PSR as there was no evidence to support this contention that the SHAC Website " directed" any individual to any section in the website where they could obtain black faxes. Not only is this statement unsupported by the evidence, but it is illogical as it would make no sense to go to a website or to direct someone there in order to " obtain" a black piece of paper. Because this statement is unsupported by the evidence, it should be stricken from the PSR.

**Paragraphs 48-60:**

Ms. Gazzola objects to the characterization of any of the alleged " facts" stated in Paragraphs 48-60 as " overt acts." First of all, each of these statements constitute presumably protected expression under the First Amendment. Additionally, none of these statements constitute " overt acts" in that none of them were in furtherance of any conspiracy. More importantly, though, there was no evidence that any of these alleged facts were found by the jury beyond a reasonable doubt, and such a finding cannot be reasonably inferred from the jury' s verdict. Accordingly, Ms. Gazzola objects to the inclusion of these statements in her PSR and, more specifically, objects to their potential inclusion in her sentencing calculation in that they were not proven beyond a reasonable doubt, found by a jury, nor admitted by her. *See Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004); and *United States v. Booker*, 543 U.S. 220 (2005). Ms. Gazzola also objects to the specific statements described in Paragraphs 48-60 for the additional reasons listed below.

**Paragraph 48:**

Ms. Gazzola specifically objects to the inclusion of these statements in her PSR in that they constitute pure political speech and political hyperbole presumably protected by the First Amendment. As such, they have no place in her PSR, and should be stricken.

**Paragraph 49:**

Ms. Gazzola specifically objects to the reference to the SHAC website' s posting of the " top 20 terror tactics" for the reasons identified in her objection to Paragraph 34, *supra*.

**Paragraphs 50-52, 54, 56, 57, 59:**

Ms. Gazzola specifically objects to the inclusion of the acts described in Paragraphs 50-52, 54, 56, 57, and 59 of her PSR in that there was no evidence adduced at trial that any of these acts were the result of or even related to any action or agreement or statement of Ms. Gazzola or her co-Defendants. As such, their inclusion in the PSR is wholly irrelevant, prejudicial, and should be stricken from the PSR.

**Paragraphs 50-51:**

Ms. Gazzola specifically objects to the statements contained in Paragraphs 50 and 51 because they misstate and mischaracterize the facts as those facts were adduced at trial. Henning Jonason testified at trial that the incidents described in Paragraphs 50 and 51 occurred *before* his information was posted on the SHAC website. Additionally, there was no evidence at trial that any of the Defendants were engaged in the protests at his house or in vandalizing his property. Thus, there was no factual nexus between the activities of the Defendants and the facts discussed in Paragraphs 50 and 51, and the implication to the contrary is prejudicial and unwarranted.

**Paragraph 52:**

Ms. Gazzola objects to the statements in Paragraph 52 of the PSR for the reasons more fully developed in her in her Motion for Judgment of Acquittal or in the Alternative Motion for New Trial. There was no evidence that Ms. Gazzola or any of her co-Defendants participated in, aided, abetted, conspired, or encouraged the illegal activities described herein. Moreover, these postings occurred after the incidents occurred, the names and addresses were publicly available, and the incidents were newsworthy information. As such, this posting of information on the website was presumptively protected by the First Amendment, and its inclusion as an overt act is inappropriate for a PSR.

**Paragraphs 53-54:**

Ms. Gazzola objects to Paragraphs 53-54 in that the SHAC website only restated a notice from a distinct and separate website that an electronic form of attack was being conducted against HLS, but did not post the computer application capable of doing so on its own website, as stated in the PSR. Additionally, there was no proof that Ms. Gazzola or any other Defendant caused this information to be posted therein. Finally, there was no proof at trial that any individuals associated with SHAC or even those having visited the SHAC website took part in the " electronic form of attack" against HLS. To the contrary, the witnesses at trial testified that they did not know who sent the emails that caused the server to overload. Thus, there was no factual nexus between the activities of the Defendants and the facts discussed in Paragraphs 53 and 54, and the implication to the contrary is prejudicial and unwarranted.

**Paragraphs 56-57:**

Ms. Gazzola objects to the statements in Paragraphs 56-57 of the PSR for the reasons more fully developed in her in her Motion for Judgment of Acquittal or in the Alternative Motion for New Trial. The postings referred to in these paragraphs contains publicly available information, and this information, as well as the signs and protests that occurred thereafter, were protected expression under the First Amendment. Accordingly, such speech is inappropriate to include as an " overt act" for the alleged conspiracy, and should be stricken. Additionally, these paragraphs mischaracterize the evidence in that they fail to reveal significant information that Carol Auletta started receiving phone calls *before* her information was published on the SHAC website, and that the protests were compliant with a court-ordered injunction. Ms. Gazzola objects to the implication to the contrary as prejudicial and an improper recitation of the facts adduced at trial.

**Paragraph 58:**

Ms. Gazzola objects to the inclusion of this sentence in her PSR because the posting of this statement was a report of true and legal facts presumptively protected by the First Amendment, and, as such, its inclusion as an overt act is inappropriate for a PSR.

**Paragraphs 59-60:**

Ms. Gazzola objects to the inclusion of the " zombie attack" and the posting of the same on the SHAC website as an overt act of any conspiracy. There was no evidence adduced at trial that any of the Defendants had any role in organizing, participating in, or conspiring to participate in the alleged " zombie attack." Additionally, there was no evidence that the SHAC website posted any notice of this " attack" prior to its occurrence. And finally, the posting of this statement after the fact was a report of true and legal facts presumptively protected by the First

15

Amendment, and, as such, its inclusion as an overt act is inappropriate for a PSR.

**Paragraphs 61-64:**

Ms. Gazzola objects to the statement that "SHAC caused the website www.stephenskills.com to be launched in that there was no evidence adduced at trial to support this inaccurate statement. To the contrary, Frank Thomas testified at trial that an entirely separate and distinct organization, In Defense of Animal, was primarily responsible for creating and establishing the above website. Additionally, this website existed before the alleged conspiracy was initiated, and thus could not be an overt act in furtherance thereof. Furthermore, to the extent these paragraphs imply any of the illegal activities discussed on the website were the result of speech that Ms. Gazzola or any of her co-Defendants engaged in, such implication is specifically objected to because, again, the testimony and other evidence at trial failed to show that any postings incited any illegal activity. As demonstrated by the testimony of Jeffrey Dillbone, the government's sole witness on this issue, and as further discussed in Ms. Gazzola's Motion for Judgment of Acquittal or in the Alternative Motion for New Trial, the speech at issue did not incite anyone to imminent lawless action; rather, any illegalities was the result of that individual's conscious decision to act and was entirely independent of the speech and actions of the Defendants herein. Finally, to the extent that Paragraphs 61-64 discuss the SHAC websites reporting on illegal activities after the fact, the posting of such statements is a report of true and legal facts presumptively protected by the First Amendment, and, as such, its inclusion as an overt act is inappropriate for a PSR.

**Paragraphs 65-77:**

Ms. Gazzola objects to the statements in Paragraph 65-77 of the PSR for the reasons more fully developed in her in her Motion for Judgment of Acquittal or in the Alternative Motion for New Trial. The names, addresses, telephone numbers, and other information discussed in Paragraphs 65 and 70 were publicly available information, the reporting of which is protected by the First Amendment and neither evidence of a crime nor indicative of any conspiracy. As to the vandalism discussed in Paragraphs 66, 68, 71, 75, and 77 there was no evidence that Ms. Gazzola or any of her co-Defendants participated in, aided, abetted, conspired to commit, or incited the illegal activities described herein. Moreover, the postings discussed in Paragraphs 67, 69, 72, 73, 74, and 76 occurred after the incidents occurred, and the incidents were newsworthy information derived from anonymous sources or from other organizations unaffiliated with any of the Defendants herein. As such, the posting of all of this information on the website was presumptively protected by the First Amendment, and its inclusion as an overt act is inappropriate for a PSR.

**Paragraph 78:**

Ms. Gazzola objects to the completely misleading and inaccurate statement that Ms. Gazzola or any other member of the conspiracy ever " threatened RH, his wife and family with burning down their home." Ms. Gazzola and other protestors were at RH' s house on August 10, 2002, engaging in protest activities with a bullhorn, but her chants of " what goes around comes around, " and the other protestor' s reply, " burn this house to the ground" were impassioned and extemporaneous political hyperbole, which could not have been accepted as a literal statement by RH or anyone else who was there, as demonstrated by the several police officers who were

17

standing within earshot of the chants, in close proximity to Ms. Gazzola and who did nothing in response to these statements. Additionally, it should be noted that there were no-on-the-scene arrests. Rather, Ms. Gazzola was charged later and summoned to court. However, it must be noted that the charges against Ms. Gazzola were ultimately dismissed on February 9, 2004, by the Suffix Superior Court, Boston, MA, via written opinion, on the basis that her activities and statements were protected by the First Amendment. To imply that such statements were a true threat to burn down the house of RH or any other such act, or to fail to note that this speech was judicially determined to constitute expressive activity protected by the First Amendment, is to completely mischaracterize what really occurred and to take significant liberties with the evidence. Such an unfounded, misleading, and inaccurate statement has no place in a PSR and should be stricken or at least made to conform to the evidence.

**Paragraphs 80 and 81:**

Ms. Gazzola objects to the inclusion of the statements contained in Paragraph 80 of the PSR as there was no evidence that Ms. Gazzola participated in, aided, abetted, conspired, or incited the activities described therein. Thus, there was no factual nexus between the activities of the Defendants and the facts discussed in Paragraphs 80 or 81, and the implication to the contrary is prejudicial and unwarranted.

**Paragraphs 82-84:**

Ms. Gazzola objects to the characterization of the email described in Paragraph 82 as offense conduct in that there was no evidence adduced at trial that Ms. Gazzola or any of her co-Defendants were involved in or conspired to produce the email. Additionally, because the email does not advocate or incite any illegal activity, it is presumptively protected by the First

18

Amendment and its inclusion as an overt act in the PSR is therefore improper. Similarly, Ms. Gazzola objects to the inclusion of the statements contained in Paragraph 83 of the PSR as there was no evidence that Ms. Gazzola or any of her co-Defendants participated in, aided, abetted, conspired, or incited the activities described therein. In fact, an individual who was not associated with Ms. Gazzola or any of her co-Defendants in any way was arrested for this vandalism. See Tr. 2/14/06 pp. 115-116. Thus, there was no factual nexus between the activities of the Defendants and the facts discussed in Paragraphs 83, and the implication to the contrary is prejudicial and unwarranted. Finally, the posting on the SHAC website discussed in Paragraph 84 occurred after the incidents occurred, and the incidents were newsworthy information derived from anonymous sources or from other organizations unaffiliated with any of the Defendants herein. As such, the posting of this information on the website was presumptively protected by the First Amendment, and its inclusion as an overt act is inappropriate for a PSR.

**Paragraph 85:**

Ms. Gazzola objects to the misleading statement contained in Paragraph 85 which implies that some sort of illegal activity was contemplated against this " Market Maker of the Week." To the contrary, as Exhibit 1010 makes clear, " [e]very week there is a week-long phone/e-mail blockade" against a specific company, which calls on activists to spend a few minutes calling, faxing, emailing, or otherwise contacting representatives of the particularly company to express their opinions. This is not illegal " direct action" but is rather the very definition of pure political speech protected by the First Amendment. As such, its inclusion as an overt act is inappropriate for a PSR, and should be stricken.

**Paragraph 86:**

Ms. Gazzola objects to the characterization of the email described in Paragraph 86 as offense conduct in that there was no evidence adduced at trial that Ms. Gazzola or any of her co-Defendants were involved in or conspired to produce the email. Thus, there was no factual nexus between the activities of the Defendants and the facts discussed in Paragraph 86, and the implication to the contrary is prejudicial and unwarranted.

**Paragraph 87:**

Ms. Gazzola objects to the inclusion of the letter described in Paragraph 87 because there was no evidence that this email incited any illegal activity, or was threatening, harassing, or otherwise unprotected speech. As such, it is presumptively protected by the First Amendment and its inclusion as an overt act in the PSR is therefore improper.

**Paragraphs 88-91:**

Ms. Gazzola objects to the statement contained in Paragraph 88 which misleadingly implies that some sort of illegal activity was contemplated against this so-called " target." Ms. Gazzola specifically objects to the mischarcterization of the evidence contained in Paragraph 89, in that there was no evidence that she or any of the other Defendants " threatened" TP' s wife. Ms. Gazzola and other protestors were at TP' s house on May 13, 2001, engaging in protests, but their chants, curses, and protests were impassioned and extemporaneous political hyperbole, not threats of any kind. To imply that such statements were a true threat is a mischaracterization of the evidence. Moreover, the postings discussed in Paragraphs 90 and 91 occurred after the incidents occurred, and the incidents were newsworthy information of publicly interested activity. As such, the posting of all of this information on the website was presumptively protected by the

First Amendment, and its inclusion as an overt act is inappropriate for a PSR. Finally, Ms. Gazzola objects to the statements contained in Paragraph 91 as offense conduct in that there was no evidence adduced at trial that Ms. Gazzola or any of her co-Defendants were involved in or conspired to engage in this illegal activity. Additionally, the statement contained in the press release is irrelevant and could only inflame the passions and prejudice Ms. Gazzola. Because there was no factual nexus between the activities of the Defendants and the facts discussed in Paragraph 91, the implication to the contrary is prejudicial and unwarranted, and should be stricken from the PSR.

**Paragraphs 92-100:**

Ms. Gazzola objects to the statements in Paragraph 92-100 of the PSR for the reasons more fully developed in her in her Motion for Judgment of Acquittal or in the Alternative Motion for New Trial. Ms. Gazzola objects to the statement contained in Paragraph 92 which misleadingly implies that some sort of illegal activity was contemplated against this so-called " target." Additionally, there is no evidence that Ms. Gazzola or any of her co-Defendants uttered the statements contained in Paragraph 92, and thus it is not relevant to the PSR. The names, addresses, telephone numbers, and other information discussed in Paragraph 97 were publicly available information, the reporting of which is protected by the First Amendment and neither evidence of a crime nor indicative of any conspiracy. All of the protests described in Paragraphs 93, 94, 95, 96, 98, 99, and 100 were presumptively legal, which are not indicative of any crime and do not constitute overt acts of any conspiracy. Even if there were any illegal activity discussed in these Paragraphs, there was no evidence that Ms. Gazzola or any of her co-Defendants participated in, aided, abetted, conspired, or encouraged the illegal activities described

therein. Moreover, the postings discussed in Paragraphs 93, 94, 95, 96, 98, 99, and 100 occurred after the incidents occurred, and the incidents were newsworthy information derived from anonymous sources or from other organizations unaffiliated with any of the Defendants herein. As such, the posting of all of this information on the website was presumptively protected by the First Amendment, and its inclusion as an overt act of the conspiracy is inappropriate for this PSR.

**Paragraphs 102-107 and 115-132:**

To the extent these paragraphs relate to the offenses, conduct, and sentencing of co-Defendants, Ms. Gazzola adopts her co-Defendants' respective objections. Ms. Gazzola also asserts that not all offense conduct committed by her co-Defendants is attributable to her merely because of the convictions, and would object to any offense conduct not specifically attributable to her under the guidelines and proven beyond a reasonable doubt at trial. Under the federal sentencing guidelines, a defendants in a jointly undertaken criminal activity is liable for the harm resulting from acts or omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant, as well as for harm resulting from the " reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a). Thus, before the harm of any acts or omissions of the co-Defendants can be used to determine Ms. Gazzola's sentence, the Court must first make a specific determination of which acts or omissions of her co-Defendants were reasonably foreseeable by Ms. Gazzola and which were taken in furtherance of the jointly undertaken criminal activity. Absent such a finding, the harm of her co-Defendants cannot be attributable to her, cannot be used to determine her guideline range, and is specifically objected to by Ms. Gazzola.

**Paragraph 109:**

Ms. Gazzola objects to the offense level calculations contained in Paragraph 109 of the PSR. First, 18 U.S.C. § 43(b)(2) provides that the maximum penalty for major economic damage is imprisonment of not more than three years, or a fine, or both. Guidelines Section 5G1.1 provides that " [w]here the statutorily authorized maximum sentence is less than the minimum of the guideline range, the statutorily authorized maximum sentence shall be the guideline sentence." *See* U.S.S.G. § 5G1.1; *see also* U.S.S.G. § 5G1.2(b). In the instant case, the minimum of Ms. Gazzola' s guideline range as determined by the draft PSR is 97 months. *See* Paragraph 220 of the PSR. Because the statutorily authorized maximum is less than the minimum of the guideline range, the three year statutory maximum should be the guideline sentence.

Additionally, Ms. Gazzola objects to the sixteen level increase described in Paragraph 109 because no increase in offense level is permitted by law and Section 2B1.1(B)(1)(I) is inapplicable to the instant case since the sentence-increasing factors were neither admitted by the Defendant nor proven beyond a reasonable doubt and found by a jury. Under the law of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and their progeny, any fact by which the maximum sentence permitted by statute may be exceeded must be proven beyond a reasonable doubt and found by the jury. Failure to do so violates the Defendant' s Sixth Amendment right to a jury trial. *See Apprendi*, 530 U.S. 466; *Jones v. United States*, 526 U.S. 227. To the extent that the government now seeks a sentence above the statutorily prescribed maximum sentence based on a loss amount (including the unfounded loss amount of more than $1,000,000 as alleged in the PSR), that loss amount is a fact that should have been charged in the indictment and submitted to the jury. *See id.*

Here, there was no loss amount charged in the indictment, and thus none found by a grand jury. Additionally, at trial, the government failed to put on sufficient evidence by which a jury could find such loss beyond a reasonable doubt. And, perhaps most importantly, the jury made no determination of loss, beyond a finding of violation of 18 U.S.C. § 43(b)(1), which only indicates a loss of greater than $10,000, when it rendered its verdict. It is thus unconstitutional to raise the offense level or to otherwise increase Ms. Gazzola's applicable sentence beyond the statutorily prescribed maximum, and any adjustment to the base offense level not specifically derived from a finding by jury beyond a reasonable doubt violates Ms. Gazzola's Sixth Amendment rights. Ms. Gazzola thus objects to any adjustment based on loss amount over and above the $10,000 implicit in the jury charge because such loss was neither pled in the indictment, nor found by either a grand jury or by the trial jury beyond a reasonable doubt.

Additionally, as Count One was charged as a conspiracy, Guideline Section 2X1.1 is also applicable. Under that guideline, the Court is first instructed to apply the guideline applicable to the substantive offense, which here is Section 2B1.1. *See* U.S.S.G. § 2X1.1(a). If the substantive offense is a conspiracy and the defendant or co-conspirator did not complete all acts believed necessary for successful completion of the substantive offense, then the offense level should be decreased by three points. *See* U.S.S.G. § 2X1.1(b)(2). In the instant case, the government has contended that the intent of the conspiracy was the complete financial ruin of HLS and "to force it to cease operations altogether due to its use of animals for research." *See, e.g.*, Paragraph 25 of the PSR. Because Ms. Gazzola and her co-Defendants were not charged with a substantive offense in Count 1, because the goal of closing down HLS was not accomplished, and because none of the Defendants completed all the acts they believed necessary for the successful

completion of the alleged offense, the three level reduction in offense level is therefore appropriate.

Accordingly, the base offense level for Count One should start off as a level six. There should be an increase of four points for loss greater than $10,000 since that was implicitly found by the jury in convicting on Section (b)(1) of 18 U.S.C. § 43. However, three points should be deducted because all the acts the Defendants believed necessary for the successful completion of the alleged offense were not completed. Therefore, Ms. Gazzola's adjusted offense level subtotal for Count One should be a seven.

**Paragraph 110:**

Ms. Gazzola objects to the offense level calculations contained in Paragraph 110 of the PSR. Specifically, Ms. Gazzola objects to the two-level increase calculated by the PO because "this offense involved stalking, threatening, harassing, or assaulting the same victim." There was no evidence adduced at trial which would support a "pattern of activity" for the stalking charges as contemplated by U.S.S.G. § 2A6.2(b)(1)(D). The alleged stalking activity was the posting of the victims' personal information on the websites, and this activity did *not* occur on multiple occasions. The government's theory of the case was not that Ms. Gazzola or her co-Defendants physically stalked the victims or directly threatened, harassed, or assaulted them, but rather that the Defendants posted personal and other information about the victims on the SHAC website, which caused the respective victim to be placed in a position of reasonable fear of serious bodily injury and/or death. Under this theory of the case, there could not have been a pattern of activity of stalking the same victim because there was no evidence that Ms. Gazzola or any of her co-Defendants posted the information about any specific victim on more than one occasion. In other

words, even accepting the government's theory of the case, the Defendants posted the information on the website and this information placed the victim in a reasonable fear of death or serious bodily injury. However, the fact that the information remained on the website is insufficient to find that Ms. Gazzola or any of her co-Defendants engaged in "a pattern of activity involving stalking, threatening, harassing, or assaulting the same victim," as contemplated by U.S.S.G. § 2A6.2(b)(1)(D). Accordingly, there is no justification for the increase in offense level, and Ms. Gazzola's adjusted offense level subtotal for Count Two should remain at the base offense level of 18.

**Paragraph 111:**

Ms. Gazzola objects to the offense level calculations contained in Paragraph 111 of the PSR for the same reasons as she objected to Paragraph 110, *supra*. Accordingly, there is no justification for the increase in offense level, and Ms. Gazzola's adjusted offense level subtotal for Counts Three and five should remain at the base offense level of 18.

**Paragraph 112:**

Ms. Gazzola objects to the offense level calculations contained in Paragraph 112 of the PSR because there was no evidence that the alleged offense involved any threats, let alone more than two threats, and thus there was no evidence to support the two level increase to her base offense level. The indictment charged Ms. Gazzola and her co-Defendants with violations of 47 U.S.C. § 223(a)(1)(C) based on their alleged conspiracy to transmit "black faxes," a telecommunication device used interstate. Again, even adopting the government's theory of the case and accepting all of the evidence they put on at trial as true, there is no evidence that any of these black faxes communicated or otherwise constituted a threat. *At most*, such faxes would annoy or harass the

recipient thereof, but such actions could not constitute a threat under any reasonable interpretation of the evidence. Additionally, the government is confined to the indictment and the theory of the case it presented at trial: that the faxes were used to harass, not to threaten. Finally, there was no indication from the jury's verdict that the use of the interstate telecommunication device was used to threaten anyone. Because there was no threat to injure a person or property, the base offense level on Count Six should be a level 6, not a level 12. *See* U.S.S.G. § 2A6.1(a)(2). For the same reasons articulated above, there is no support in the evidence and thus no justification for the two level increase for an "offense [that] involved two or more threats." *See* U.S.S.G. § 2A6.1(b)(2).

Accordingly, the base offense level for Ms. Gazzola on Count Six should start off as a level six. There should be no increases higher base offense level since there was no evidence of threats, and, *a fortiori*, no increase in the offense level for additional threats. Therefore, her adjusted offense level subtotal for Count Six should be a six.

**Paragraph 113:**

Ms. Gazzola objects to the characterization of her role in the offense and the offense level calculations contained in Paragraph 113 of the PSR because there was insufficient evidence to establish that Ms. Gazzola was an organizer or leader of any criminal activity. First, as explained in her objections to Paragraph 26 to the PSR, *supra*, Ms. Gazzola could not be a "campaign coordinator" or hold any other official position, as those terms are commonly understood because, other than Mr. Kjonaas acting as president, SHAC USA, Inc. had no employees or official positions. There was no corporate resolutions or employment contracts which would or could confirm that the corporation had any such positions or that anyone acted as a campaign coordinator

or any similar position. Accordingly, Ms. Gazzola objects to the description of her as " campaign coordinator" for SHAC as such a finding is unsupported by the evidence. Additionally, there was no evidence presented at trial of Ms. Gazzola " assisting in coordinating activities that were posted on the SHAC website," and the only evidence of her " keeping in touch with various individuals around the country" is of her collecting information about the events that those persons had planned. Rather than her coordinating any campaigns, Ms. Gazzola actually called others and asked them what *they* had planned so that SHAC could announce these events on the website. *See, e.g.*, Exhibits 5002, 5005, 5049, 5063, and 5064. Such actions are the complete opposite of " coordinating," leading, or organizing and thus could not support such a finding or the corresponding increase in offense level.

Additionally, the statement in Paragraph 113 of the PSR that " Gazzola was involved in putting together the customer list that targeted various companies that did business with HLS which was posted on the SHAC website" is unsupported by the evidence. In fact, there was never any evidence of a " customer list" at all, or any other list on the website that could be deemed as such. The only relatively similar piece of evidence was a " customers" folder that was contained on a computer used by Ms. Gazzola. However, there was no evidence that the contents of this folder corresponded to either a list posted on any website or a list of companies that subsequently became " victims." In short, this statement in the PSR is incorrect, misleading, and prejudicial because there was never any evidence of a list compiled by Ms. Gazzola, there was never any evidence of a correlation between anything compiled by Ms. Gazzola and the contents of any webpage, and there was never any evidence that Ms. Gazzola ever identified any customer to be " targeted" or protested, nor that any company identified by her was ever targeted or protested.

Accordingly, this statement in the PSR is not supported by the evidence and should be stricken from the PSR.

Ms. Gazzola also objects to the implication she acted as a leader or organizer of a criminal activity because of where she lived, whom she associated with, or what she said. The fact that Ms. Gazzola " lived at 101 Home Street along with Kjonaas and Conroy," or that she " conversed with Stepanian, Harper, and Fullmer discussing aspects of the SHAC campaign to shut down HLS" are not, in and of themselves, evidence of any crime or conspiracy or, more specifically, of any leadership role in any criminal offense. Rather, such statements are simply evidence that Ms. Gazzola lived at a certain address, associated with certain individuals, and spoke freely about a topic in which she believed. Under the First Amendment, Ms. Gazzola has a right to freely associate with others and to speak on issues of public concern, and the implication that her associational activities or protected expression in and of themselves warrants additional points as an organizer or leader of a criminal activity is specifically objected to.

Similarly, Ms. Gazzola would note that the fact that she " took part in home demonstrations" is not evidence of any leadership or organizer role. Ms. Gazzola objects to the implication to the contrary and, accordingly, requests that this statement be stricken from this Paragraph of the PSR.

Finally, Ms. Gazzola would point out the striking similarities between the description of Darius Fullmer' s role in the offense (see Paragraph 132 of Gazzola' s PSR) and her own alleged role, and would noted the glaring inequity of granting Mr. Fullmer a two-level decrease whereas Ms. Gazzola is given a four-level increase for similar actions. Mr. Fullmer is described in Paragraph 132 as allegedly: (1) being a president of a group that was in the evidence as being

involved in the alleged "conspiracy" just as Ms. Gazzola was; (2) being instrumental in getting that group to fucus on HLS instead of fur protests; (3) assisting Ms. Gazzola in creating a list that contributed to Ms. Gazzola receiving a four-point increase; (4) attending home demonstrations and office demonstrations; and (5) conversing with others.

In other words, as alleged in the PSR, Gazzola was a campaign coordinator whereas Fullmer was a president of an animal rights group; Gazzola worked on a customer list, whereas Fullmer assisted in making a customer list; Gazzola attended home demonstrations, whereas Fullmer attended home and office demonstrations; and the two conversed with each other and others about the campaigns. Thus, essentially, the only significant difference in the actions and roles of Ms. Gazzola and Mr. Fullmer according to the PSR, was that Ms. Gazzola was allegedly acting as a " spokesperson" for SHAC. Yet, for inexplicable reasons, Mr. Fullmer is given a two-point reduction for minor role in the offense and Ms. Gazzola is given a four-point increase for the same actions and offense. Such inequities should find no place in a PSR.

Additionally, as set forth in the Application Notes to U.S.S.G. § 3B1.1, in determining if an increase for a leadership role is warranted the Court is instructed to consider such factors as whether the defendant had any decision making authority, recruited accomplices, or had control or authority over the actions of others, the degree to which the defendant exercised such control or authority, the degree of participation in planning and organizing the offense, and the scope and nature of the illegal activity. As explained more fully above, there was insufficient evidence that Ms. Gazzola actually organized or acted a leader of any criminal activity because there was no evidence that she had any control or authority over others, that she recruited anyone, that she had any decision making authority, or that she planned or organized any criminal activity.

Accordingly, under the factors illustrated in the Application Notes to U.S.S.G. § 3B1.1, there is no justifiable reason to increase Ms. Gazzola's offense level as an organizer or leader of any offense. For this and the foregoing reasons, Ms. Gazzola objects to the four-point increase for her role in the offense.

**Paragraph 114:**

Ms. Gazzola objects to the application of the grouping rules as outlined in Paragraph 114 because, contrary to the PSR's conclusion, Counts Two through Six should not be excluded from the operation of the grouping rules. These counts are excluded from grouping under U.S.S.G. § 3D1.2(d) only. However, Subsection (b) permits grouping when the counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan. *See* U.S.S.G. § 3D1.2(b). The conspiracy charged in Count Two and one of the substantive crimes in Counts Three, Four, or Five could thus be grouped, removing one of the Units calculated by the Probation Officer in Paragraph 174.

**Paragraph 133:**

As set forth and argued more thoroughly by Ms. Gazzola's co-Defendants, Ms. Gazzola objects to the list of "victims" for restitution purposes as described in Paragraph 133, and she hereby adopts the arguments put forth by counsel for her co-Defendants.

**Paragraph 134:**

Ms. Gazzola objects to the list of "victims" for restitution purposes as described in Paragraph 134 for the same reasons as described in her objections to Paragraph 133, *supra*.

**Paragraph 136:**

Ms. Gazzola objects to Paragraph 136 for the same reasons as described in her objections to Paragraph 133, *supra*.

**Paragraph 138:**

Ms. Gazzola objects that the 2006 edition of the *Guidelines Manual* is an inappropriate reference considering the time frame of the crimes charged. The conspiracy charged in Count One allegedly lasted through February 2004, and thus the 2003 edition of the *Guidelines Manual* is the appropriate reference for this Count. The conspiracy charged in Count Two and the substantive offenses charged in Counts Three through Five alleged lasted through December 2002, and thus the 2002 edition of the *Guidelines Manual* is the appropriate reference for these Counts. Finally, the conspiracy charged in Count Six allegedly lasted through February 2004, and thus the 2003 edition of the *Guidelines Manual* is the appropriate reference for this Count.

**Paragraphs 139-144:**

Ms. Gazzola objects to the offense level calculations contained in Paragraphs 139-144 of the PSR. For the reasons more fully developed in the objections to Paragraph 109, *supra*, the base offense level for Count One should start off as a level six. The increase of sixteen levels is unwarranted and unconstitutional as not having been proven beyond a reasonable doubt, but there should be an increase of four points for loss greater than $10,000 since that was implicitly found by the jury in convicting on Section (b)(1) of 18 U.S.C. § 43. However, three points should be deducted because all the acts the Defendants believed necessary for the successful completion of the alleged offense were not completed. Finally, as explained more thoroughly in her objections to Paragraph 113, *supra*, there is no justifiable reason to increase Ms. Gazzola's offense level as

32

an organizer or leader of any offense. Therefore, Ms. Gazzola' s adjusted offense level subtotal for Count One should be a seven.

**Paragraphs 145-150:**

Ms. Gazzola objects to the offense level calculations contained in Paragraphs 145-150 of the PSR. For the reasons more fully developed in the objections to Paragraphs 110 and 113, *supra*, there is no justification for the increase in offense level as there was no " pattern of activity" for the stalking charges  as contemplated by U.S.S.G.  § 2A6.2(b)(1)(D) and there is no justifiable reason to increase Ms.  Gazzola' s offense level as an organizer or leader of any offense. Accordingly, Ms. Gazzola' s adjusted offense level subtotal for Count Two should remain at the base offense level of 18.

**Paragraphs 151-162:**

Ms. Gazzola objects to the offense level calculations contained in Paragraphs 151-162 of the PSR. For the reasons more fully developed in the objections to Paragraphs 110-111 and 113, *supra*, there is no justification for the increase in offense level as there was no " pattern of activity" for the stalking charges  as contemplated by U.S.S.G. § 2A6.2(b)(1)(D) and there is no justifiable reason to increase Ms. Gazzola' s offense level as an organizer or leader of any offense. Accordingly, Ms. Gazzola' s adjusted offense level subtotal for Counts Three and Five (and for Count Four, should it be included as discussed in the objections to Paragraph 11, *supra*) should remain at the base offense level of 18.

**Paragraphs 163-168:**

Ms. Gazzola objects to the offense level calculations contained in Paragraphs 163-168 of the PSR. For the reasons more fully developed in the objections to Paragraph 112, *supra*, the base

offense level for Ms. Gazzola on Count Six should start off as a level six. There should be no increases higher base offense level since there was no evidence of threats, and, *a fortiori*, no increase in the offense level for additional threats. Additionally, as explained more thoroughly in her objections to Paragraph 113, *supra*, there is no justifiable reason to increase Ms. Gazzola's offense level as an organizer or leader of any offense. Therefore, her adjusted offense level subtotal for Count Six should be a six.

**Paragraphs 169-181:**

Ms. Gazzola objects to the multiple count adjustment calculations in Paragraphs 169-181 for the following reasons: As shown in the objections to Paragraphs 139-144, *supra*, the adjusted offense level subtotal for Count One should be a seven. As shown in the objections to Paragraphs 145-162, *supra*, the adjusted offense level subtotal for each of Counts Two through Six should be eighteen. And as shown in the objections to Paragraphs 163-168, *supra*, the adjusted offense level subtotal for Count Six should be a six. Accordingly, under the application of U.S.S.G. § 3D1.4(c), Ms. Gazzola should get zero units for Counts One and Six because that group is nine or more levels less serious than the highest level. Additionally, as shown in the objections to Paragraph 114, *supra*, the conspiracy charged in Count Two and one of the substantive crimes in Counts Three, Four, or Five should be grouped, thus removing one of the Units calculated by the Probation Officer in Paragraphs 170-172 and 174. Thus, Ms. Gazzola's total number of Units as represented in Paragraph 174 should be three total units. When added to the "greater adjusted offense level" of 18, the three-level increase in offense level from the number of units equals a combined adjusted offense level of 21. Accordingly, the Combined Adjusted Offense Level in Paragraph 177 and the Total Offense Level represented in Paragraph 181 should both be 21.

**Paragraph 195:**

Ms. Gazzola objects to the characterizations and implications contained in Paragraph 195, which make her sound uncooperative. Ms. Gazzola did not indicate that she could not discuss *anything* in her life between the years 2001 and 2004. Rather, a more accurate version should read that, " on advice of counsel, due to issues regarding a possible appeal in this case, the Defendant and her attorney advised the Probation Officer that she respectfully declines to discuss her residence or employment history between August 2001 and the date of the indictment."

**Paragraph 196:**

Ms. Gazzola would note that her father is Robert Gazzola not Robert Harris as the wording in Paragraph 196 the PSR makes it seem.

**Paragraph 197:**

The last sentence should read that " *she* sees them on holidays" not " *he* sees them on holidays."

**Paragraph 202:**

Thought the report is correct that Ms. Gazzola described her mental health as " good" during her pre-sentencing interview, she now reports that her emotional state has deteriorated since that time and would not describe her mental health as " poor."

**Paragraph 206:**

Ms. Gazzola did not major in Art History as reported in Paragraph 206 of the PSR. Rather, Ms. Gazzola earned a BA with an " individualized major" from the Gallatin School of Individualized Study at NYU. Additionally, it should be noted that she graduated from NYU in 3½ years.

**Paragraph 209:**

Ms. Gazzola would note that she moved to Goleta on August 15, 2005 after a mistrial was declared in the initial case in July 2005. She arranged the job at Kaplan before she moved, and she also got a temporary job while in Goleta while waiting to find more permanent employment.

**Paragraph 211:**

Ms. Gazzola would clarify Paragraph 211 by noting that the trial referenced in the last sentence of Paragraph 211 resulted in a mistrial.

**Paragraph 212:**

Ms. Gazzola would clarify Paragraph 212 by noting that she worked for In Defense of Animals from September 2000 through July 2001, *not* September 2001 through July 2001.

**Paragraph 214-215:**

Ms. Gazzola would note that the statement that her father is her " financial provider" or that he has been " assisting with [her] financial responsibility is recent months" is somewhat misleading. While her father has allowed her to live at his place and has fed her, she has used her savings to pay for all her bills and personal expenses. She would note that her father has no intention of paying on her loans.

**Paragraph 217:**

Ms. Gazzola would note that she also has a loan through NYU/ACS which has approximately $2,500-$3,000 outstanding, and also has more than $800 in outstanding medical bills.

**Paragraph 218:**

Ms. Gazzola would point out that, although she may be a well educated, physically fit individual as stated in Paragraph 218 of the PSR, if she has six felonies on her record and has spent any significant time in prison, her likelihood of finding substantially gainful employment will be significantly reduced and thus her capabilities of paying any fine will be likewise greatly reduced.

**Paragraph 220:**

Ms. Gazzola objects to the guideline range calculated in Paragraph 220 of the PSR. Based on a total offense level of 21, as calculated based on Ms. Gazzola's objections throughout the PSR, *supra*, and a criminal history category of I, the guideline range for imprisonment should be 37-46 months.

**Paragraph 228:**

As noted in the objections to Paragraph 11, *supra*, there appears to be an oversight in that the PSR fails to note the conviction on Count Four. Thus, the special assessment referred to in Paragraph 228 of the PSR should be $600 not $500.

**Paragraph 229:**

Ms. Gazzola objects to the guideline fine range calculated in Paragraph 229 of the PSR. Based on a total offense level of 21, as calculated based on Ms. Gazzola's objections throughout the PSR, *supra*, the guideline range for the fine should be from $7,500 to $75,000. Additionally, as noted in Paragraphs 214-218 and Ms. Gazzola's objections thereto, her financial ability to pay a fine is and likely will be extremely limited. Therefore, Ms. Gazzola respectfully suggests that any fine assessed should be at the low end of this range.

**Paragraphs 230-231:**

As set forth and argued more thoroughly by Ms. Gazzola's co-Defendants, Ms. Gazzola objects to the calculation of restitution under the statutory provisions and the guidelines provisions as described in Paragraph 230-231, and she hereby adopts the arguments put forth by counsel for her co-Defendants.

Respectfully submitted,

_____
/s/ H. Louis Sirkin
_____ H. LOUIS SIRKIN (Ohio Bar No. 0024573)
Sirkin, Pinales & Schwartz LLP
105 West Fourth Street, Suite 920
Cincinnati, Ohio 45202
Telephone: (513) 721-4876
Telecopier: (513) 721-0876

Counsel for Defendant Lauren Gazzola

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was provided by

_electronic mail delivery on the 23 day of May, 2006 to:

Robert A. Obler
143 White Horse Avenue
Trenton, New Jersey 08610

Joshua L. Markowitz
Markowitz Gravelle & Schwimmer LLP
3131 Princeton Pike
Lawrenceville, New Jersey 08648

Hal K. Haveson
Haveson & Otis
194 Nassau Street
Princeton, New Jersey 08542

Jerome A. Ballarotto
143 White Horse Avenue
Trenton, New Jersey 08610

Robert G. Stahl
220 St. Paul Street
Westfield, NJ 07090

James R. Murphy
947 State Road
Princeton, New Jersey 08540

Andrew F. Erba
1617 John F. Kennedy Boulevard
Suite 800
Philadelphia, PA 19103-2030

Charles B. McKenna
Assistant U.S. Attorney
970 Broad Street, Suite 700
Newark, New Jersey 10712

 

 

    /s/ H. Louis Sirkin
H. LOUIS SIRKIN (Ohio Bar No. 0024573)